HERWIG J. SCHLUNK, as Adm'r of the Estates of Franz J. Schlunk, Deceased, *et al.*, and Sylvia Schlunk, Deceased, Plaintiff-Appellee, v. VOLKSWAGENWERK AKTIENGESELLSCHAFT, Defendant-Appellant, (Dennis J. Reed *et al.*, Defendants).

First District (2nd Division)   No. 85—3169

Opinion filed June 17, 1986.

Ross & Hardies, of Chicago (James K. Toohey and David C. Bohrer, of counsel), for appellant.

Jack Ring & Associates, of Chicago (Jack Ring and Judith E. Fors, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant Volkswagenwerk Aktiengesellschaft (hereinafter VWAG), a West German corporation, appeals, with certification of the circuit court under Supreme Court Rule 308(a) (87 Ill. 2d R. 308(a)), from the denial of its motion to quash service, which was had in Illinois upon its wholly owned subsidiary, Volkswagen of America (VWoA), a New Jersey corporation. We affirm.

On June 4, 1984, plaintiff, Herwig Schlunk, filed suit against VWoA and Dennis Reed, stemming from the death of his parents in a head-on collision that occurred on December 17, 1983, in Cook County, Illinois. Reed was served by a special process server and an order of default was later entered against him. VWoA was served through its registered agent for service of process in Illinois, C.T. Corporation System, and has filed a timely appearance and answer to the complaint.

On October 16, 1984, plaintiff obtained leave to file his first amended complaint, in which he alleged that design defects in the decedents' 1978 VW Rabbit rendered it uncrashworthy and joined VWAG as a defendant. The car was designed and manufactured in West Germany by VWAG and shipped to VWoA for sale in the United States. The judge then ordered that a summons issue against VWAG. Plaintiff attempted to effect service upon VWAG through C.T. Corporation System, but the latter refused to accept it. On November 19, 1984, an alias summons was issued to C.T. Corporation System, whereby plaintiff attempted to serve VWoA "as Agent for" VWAG.

VWAG filed a special and limited appearance on December 18, 1984, for the purpose of quashing service of process. In support of its motion to quash, VWAG submitted an affidavit from Robert Cameron, manager and product liaison of VWoA, which asserted that VWoA is a separate and independent corporation that operates as an agent of VWAG only for the purpose of receiving notices under the National Traffic and Motor Vehicle Safety Act (15 U.S.C.A. sec. 1399(e) (West 1982)). In response to plaintiff's discovery requests, VWAG and VWoA produced documents reflecting, in part, the relationship between the two companies. In addition both submitted answers to interrogatories.

After a hearing, the circuit court, in a written opinion, denied the motion to quash. The court found:

"1. VWoA is a New Jersey corporation with its principal place of business in Michigan and registered to do business in Illinois ***.

2. VWAG has not appointed VWoA as its agent for service of

process in common law actions brought against it in Illinois or any other state ***.

3. VWoA is a wholly-owned subsidiary of VWAG, a majority of the members of the board of directors of VWoA are members of the board of management of VWAG, and VWoA is the exclusive importer and distributor of VWAG products sold in the United States pursuant to a manufacturer-importer agreement entered into between VWAG and VWoA."

Based on the above findings the judge concluded:

"VWoA and VWAG are so closely related that VWoA is an agent for service of process as a matter of law, notwithstanding VWAG's failure or refusal to have made such a formal appointment of VWoA as its agent."

The court concluded that plaintiff's service of process was effective under the supreme court rules and Illinois code, and was not in conflict with "The Convention On the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters" (Hague Convention), which, the court ruled, applied only to service of process outside the United States. Upon the application of VWAG, the court certified two questions of law to this court pursuant to Supreme Court Rule 308(a): (1) whether the service in this case violated the Hague Convention, and (2) whether VWoA and VWAG are so closely related that VWoA is VWAG's agent for service of process. This court granted VWAG's petition for leave to appeal on November 26, 1985.

■■ VWAG first argues that service on VWoA was ineffective as to it because the Hague Convention provides the exclusive method of service on residents of signatory nations. West Germany became subject to the treaty in 1979 (79 *Department of State Bulletin* 71 (July 1979), the United States in 1969 (20 U.S.T. 361, T.I.A.S. 6638). VWAG correctly points out that, under the supremacy clause, this court is bound by treaties of the United States, if applicable, even in the face of contrary State laws. (U.S. Const., art. VI, cl. 2.) However, nothing done in this case pursuant to State law violated the Hague Convention. Article I of the convention provides in relevant part: "The present Convention shall apply in all cases, in civil or commercial matters, *where there is occasion* to transmit a judicial or extrajudicial document *for service abroad*." (Emphasis added.) Hague Convention, opened for signature November 15, 1965, 20 U.S.T. 361-73, T.I.A.S. 6638, 658 U.N.T.S. 163, reprinted in 28 U.S.C.A. Fed. R. Civ. P.4, at 92-107 (West Supp. 1986); VII *Martindale & Hubbell Law Directory*, Pt. VII, Selected International Conventions, at 1—8 (1986).

VWAG apparently has difficulty with the phrase "service abroad," and implies that it is ambiguous. We do not find it so. Under Illinois law, if the target for service can be found within the State there is simply no occasion for service abroad. Since there is no occasion for service abroad in this case, the Hague Convention, by its own terms, does not apply. See report of the Senate Committee on Foreign Relations on the Convention on the Service Abroad of Judicial and Extrajudicial Documents, S. Exec. Rep. No. 6, 90th Cong., 1st Sess. 9 (Apr. 12, 1967), (statement of Joe C. Barrett: "[T]his convention does not invade the domain of state law in the United States," as quoted in *DeJames v. Magnificence Carriers, Inc.* (3d Cir. 1981), 654 F.2d 280, 289 n.5, *cert. denied* (1981), 454 U.S. 1095, 70 L. Ed. 2d 620, 102 S. Ct. 642).

■ VWAG asserts that regardless of whether VWoA was its agent for service of process, service must be had according to the procedures set out in the convention. VWAG seems to suggest that, under the convention, one cannot serve West German residents pursuant to Illinois law even when they are in Illinois. VWAG contends, in essence, that the convention is a shield protecting foreign nationals from Illinois legal process while they are in the State. This simply does not survive scrutiny. Even if the intended recipient is standing right next to him, a process server, according to VWAG, would have to send a summons off to West Germany. VWAG has cited no cases explicitly holding that the treaty was intended to work such a drastic interference with orderly State procedure. On the other hand, there are numerous cases rejecting such an argument. For example, in *Lamb v. Volkswagenwerk Aktiengesellschaft* (S.D. Fla. 1985), 104 F.R.D. 95, the court stated:

"The purpose of the Hague Convention is to simplify the procedure for serving judicial documents abroad to ensure that the party to be served in the foreign country will receive notice in timely fashion. There is nowhere among the provisions of the Hague Convention any indication that it is to control attempts to serve process on foreign corporations or agents of foreign corporations within the State of origin. *** If the service of process in the instant case had been attempted directly on VWAG in the Federal Republic of Germany, then the provisions of the Hague Convention would have to be complied with. In this case, however, service of process was entirely accomplished within the United States by serving the agent of the Defendant VWAG; the provisions of the Hague Convention are simply inapplicable." (*Lamb v. Volkswagenwerk* (S.D. Fla.

1985), 104 F.R.D. 95, 97. See also *Zisman v. Sieger* (N.D. Ill. 1985), 106 F.R.D. 194, 199-200; *McHugh v. International Components Corp.* (N.Y. Sup. Ct. 1983), 118 Misc. 2d 489, 491, 461 N.Y.S.2d 166, 167.) Indeed, Article 10 of the convention itself says:

"Provided the State of destination does not object, the present Convention shall not interfere with—

\* \* \*

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." (Hague Convention, opened for signature November 15, 1965, 20 U.S.T. 361, T.I.A.S. 6638, 658 U.N.T.S. 163, reprinted in 28 U.S.C.A. Fed. R. Civ. P.4, at 92-107 (West Supp. 1986), and VII *Martindale & Hubbell Law Directory*, Pt. VII, Selected International Conventions, 1-8 (1986).)

If VWoA, which is located in this country, is an agent of VWAG here, then the United States is the "State of destination" under the treaty, and the treaty allows plaintiff to effect service using American procedure.

VWAG cites *Low v. Bayerische Motoren Werke, A.G.* (N.Y. App. Div. 1982), 88 A.D.2d 504, 449 N.Y.S.2d 733, and argues that the court held that mailing process to West Germany and serving it upon the wholly owned subsidiary of the German defendant in New York *both* violated the Hague Convention. In fact, the court held that the mailing violated the Hague Convention, and that the record did not support a finding that the wholly owned subsidiary was, *as a matter of New York law*, an agent for service of process of the West German defendant. (88 A.D.2d 504, 505-06, 449 N.Y.S.2d 733, 735.) Similarly, in *Cipolla v. Picard Porsche Audi, Inc.* (R.I. 1985), 496 A.2d 130, the plaintiff was allegedly injured when the accelerator stuck on her VW Rabbit. She originally brought suit against the car dealer and VWoA, but was allowed to file an amended complaint to include VWAG as an additional defendant. She then attempted to effect service on VWAG by delivering a copy of the summons and the amended complaint to the Rhode Island Secretary of State. Subsequently, plaintiff's counsel sent a certified letter to VWoA and enclosed a copy of the summons and the amended complaint. The court held that service on VWAG had to be perfected according to the terms of the Hague Convention, although Rhode Island's statutes and rules otherwise provided several alternative methods for service of process. The court added:

"[Plaintiff's] appellate counsel has cited a plethora of cases to buttress her contention that VWAG's multiple contacts with Rhode Island make it subject to suit without any infringement on VWAG's due-process rights. Some of those cases predate the effective date of the Hague Convention, and others, for reasons not readily apparent, make no mention whatsoever of the 1965 treaty." (496 A.2d 130, 132.)

We do not read this case as holding that the Hague Convention precluded the plaintiff from serving VWoA as an agent of VWAG. There is no indication that mailing the amended complaint to VWoA was an attempt to serve VWoA as agent for VWAG, or to do anything more than simply notify the American company, which was itself a defendant, of the new pleading. The Rhode Island Supreme Court did not discuss agency theory.

Finally, VWAG argues in its reply brief that the purpose of the Hague Convention is to achieve a uniform method of service, because it is unfair to subject residents of other nations to the patchwork of alternative methods found in each of the fifty States. It is unclear why foreign nationals should be allowed greater protection than United States citizens who are also subject to the laws of any State with which they have sufficient contacts. In any event, VWAG has conceded away this preemption argument by acknowledging that domiciliaries of foreign States can waive the protection of the Hague Convention by appointing an agent for service of process in the United States. If the supremacy clause permits service on agents within the forum State, despite the existence of the Hague Convention (which says nothing about locally appointed agents), it should not matter how that agency relationship came about.

Plaintiff agrees that if service on VWAG as agent of VWoA was improper, then the motion to quash should have been granted, because no attempt was made to serve VWAG in West Germany, under the Hague Convention or otherwise. The main issue in this case, then, is whether serving VWoA as agent for VWAG was good service.

VWAG does not argue that it lacks sufficient minimum contacts with the State for the exercise of jurisdiction consistent with due process. (See *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 471-87, 85 L. Ed. 2d 528, 540-50, 105 S. Ct. 2174, 2181-90; *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 315-22, 90 L. Ed. 95, 101-06, 66 S. Ct. 154, 158-61.) The Illinois Supreme Court has held that jurisdiction under the Illinois long-arm statute (Ill. Rev. Stat. 1985, ch. 110, par. 2—209), is not coextensive with the due process clause of the United States Constitution, but must be satisfied inde-

pendently. (*Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436, 427 N.E.2d 1203, 1206.) One basis for the exercise of long-arm jurisdiction is the "transaction of any business within this State." (Ill. Rev. Stat. 1985, ch. 110, par. 2—209(1).) However, to assert jurisdiction under this provision, the claim must be related to the act giving rise to jurisdiction. (*People v. Parsons Co.* (1984), 122 Ill. App. 3d 590, 597, 461 N.E.2d 658, 664. See also *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 198-99, 429 N.E.2d 847, 850-51.) Plaintiff did not allege that the VW Rabbit involved in the collision in this case was purchased in Illinois, and apparently does not rely on the "transaction of business" as the basis for jurisdiction.

Apart from the long-arm statute, jurisdiction may be acquired if the nonresident corporation is "doing business" in the State. (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 199, 429 N.E.2d 847, 851.) If a foreign, unlicensed corporation is found to be doing business in Illinois, it is amenable to the jurisdiction of our courts for causes of action not arising from its transaction of business here. (87 Ill. 2d 190, 200, 429 N.E.2d 847, 852.) There is no precise test for what constitutes "doing business" within the State. However, the "doing business' standard is not equated with the full reach of due process, because to do so would render the long-arm statute meaningless. (87 Ill. 2d 190, 201, 429 N.E.2d 847, 852.) Justice Cardozo, while serving on the New York Court of Appeals, said that "doing business" is a corporation's operating within the State "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.* (1917), 220 N.Y.2d 259, 267, 115 N.E. 915, 917 (quoted with approval *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 203, 429 N.E.2d 847, 853).

VWAG does not contest the legal power of the Illinois courts to consider the claims against it, once process is served in a manner VWAG deems proper. There are two prerequisites for an Illinois court to exercise personal jurisdiction over a defendant. It is necessary (1) that the defendant has conducted sufficient activity within the State to have submitted to the jurisdiction of our courts and (2) that the defendant has been served with process in accordance with the formal requirements of Illinois law. "Doing business" is primarily a test of submitting to Illinois jurisdiction in the first sense. Although the two aspects of personal jurisdiction are distinct, many previous Illinois decisions on the validity of serving a parent corporation through its subsidiary have focused on whether the parent was "doing busi-

ness" in this State. The answer to this question usually depends upon the relationship between parent and subsidiary. For example, plaintiff places great reliance on *Maunder v. DeHavilland Aircraft of Canada, Ltd.* (1984), 102 Ill. 2d 342, 466 N.E.2d 217, *cert. denied* (1984), 469 U.S. 1036, 83 L. Ed. 2d 401, 105 S. Ct. 511. In that case, two plaintiffs brought suit in Illinois against the Canadian manufacturer of an airplane that had crashed in Zambia. The manufacturer was De-Havilland Aircraft of Canada, Ltd. (hereinafter, Ltd.), of Downsview, Ontario. Its wholly owned subsidiary, DeHavilland Canada, Inc. (Inc.), was a Delaware corporation with its principal place of business in Rosemont, Illinois. Ltd. was not licensed to do business in Illinois and had not appointed an agent for service of process. Plaintiffs served Ltd. by leaving copies of the complaint and summons with an employee of Inc. in its Rosemont office. Our supreme court concluded that Ltd. was doing business in Illinois through Inc. The court then added:

> "Ltd.'s contention that service of process on Inc. was not effective is without merit. We believe that Inc. was an agent of Ltd. for service of process, and that Ltd. was fully apprised of the pendency of the suit by the delivery of a copy of the complaints and summons at Inc.'s office in Rosemont. *Davis v. Dresback* (1876), 81 Ill. 393.
> ***
> Since we have determined that Ltd. was doing business in Illinois, we need not address the alternative theory of whether Inc. was the *alter ego* of Ltd." 102 Ill. 2d 342, 353-54, 466 N.E.2d 217, 223.

Inc. was established and wholly owned by Ltd. Its sole business was the sale of aircraft parts for Ltd., and Inc.'s own manual stated, "The function of this Company is to provide Product Support to the American users of the Parent Company's products." (102 Ill. 2d 342, 347, 466 N.E.2d 217, 219.) However, Inc. also purchased and distributed standard parts from other suppliers, too. (112 Ill. App. 3d 879, 883, 445 N.E.2d 1303, 1306, *aff'd* (1984), 102 Ill. 2d 342, 466 N.E.2d 217.) An average of eight phone calls per day were made from Inc. to the parent's office in Ontario. Ltd. paid the salaries of Inc.'s directors and guaranteed Inc.'s lease in Rosemont. Ltd. included Inc.'s address in its own advertising. The court concluded:

> "If Ltd. cannot be sued in Illinois, it follows that Ltd. cannot be sued anywhere in the United States under the theory of "doing business," since Inc. is the only subsidiary of Ltd. in the United States. We believe that a corporation that has es-

tablished a supply depot in Illinois to support an enterprise that has sold 885 airplanes in the United States and logged millions of passenger miles should be subject to the jurisdiction of Illinois courts." 102 Ill. 2d 342, 354, 466 N.E.2d 217, 223.

Plaintiff similarly argues that VWAG was doing business in Illinois by virtue of its relationship with VWoA. In response to this argument, VWAG points out that no VWoA officers or employees are paid by VWAG, and that VWAG and VWoA have no employees in common. VWoA maintains separate books and records and carries on business in its own name and for its own account. VWAG does not guarantee any loans of VWoA, and all commercial transactions between the two are set out in legally enforceable contracts. VWAG contends that VWoA is more than a mere sales outlet in that it manufactures its own lines of products, imported Porsches in the past as well as VWAG's products, and has a work force in excess of 6,000 employees.

For 30 years, VWAG and VWoA operated pursuant to a written importer agreement. The importer agreement provides: "VWoA is not an agent or representative of VWAG and shall not act or purport to act for the account of or on behalf of VWAG." However, written disclaimers of an agency relationship are not controlling. (See *Slates v. International House of Pancakes, Inc.* (1980), 90 Ill. App. 3d 716, 726, 413 N.E.2d 457, 464-65.) Based in part on the 1974 version of the importer agreement, at least three courts have found VWAG's control over VWoA to be so pervasive as to render VWoA the agent for service of process upon VWAG. (*Roorda v. Volkswagenwerk, A.G.* (D.S.C. 1979), 481 F. Supp. 868, 870-80; *Lamb v. Volkswagenwerk Aktiengesellschaft* (S.C. Fla. 1985), 104 F.R.D. 95, 97-101; *Ex parte: Volkswagenwerk Aktiengesellschaft* (Ala. 1983), 443 So. 2d 880, 882-85.) There are also cases holding to the contrary. (See *Volkswagenwerk Aktiengesellschaft v. McCurdy* (Fla. App. 1976), 340 So. 2d 544). Typical of the contrary cases is *Richardson v. Volkswagenwerk, A.G.* (W.D. Mo. 1982), 552 F. Supp. 73, in which the court said:

"Defendant VWAG has submitted the affidavit of Robert Cameron showing that VWAG did not exercise such a degree of control over VWOA to make VWOA a department of VWAG or to make the activities of VWOA the activities of VWAG. Plaintiffs, on the other hand, have not submitted evidence showing facts to the contrary, either at trial or by affidavit, and therefore have not met their burden. *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1186 (7th Cir. 1969)." *Richardson v. Volkswagenwerk, A.G.* (W.D. Mo. 1982), 552 F. Supp. 73, 79.

See also *Ex parte: Volkswagenwerk Aktiengesellschaft* (Ala. 1983), 443 So. 2d 880, 884-85.

VWAG revised the importer agreement in August 1983 in an attempt to vest more discretion in VWoA. The 1983 importer agreement is nontransferable and appoints VWoA to market and distribute VWAG products in the United States. VWAG determines which of its products will be distributed by VWoA. VWAG also determines the method of ordering. Orders are always binding on VWoA unless rejected by VWAG within 4 weeks. VWoA is not entitled to any claims against VWAG stemming from rejection of its orders. VWoA must pay any price increase established by VWAG, even as to previously placed orders. VWAG has no liability to VWoA for early, late or nondelivery of its products if such failure or delay is due to circumstances beyond VWAG's control.

Under the agreement, VWoA is required to consult with VWAG in establishing dealerships and setting its sales objectives. VWAG sets standards for used-car sales and for maintaining stock and stock levels. Each dealership maintained by VWoA must conform with VWAG's "Identification Program," and it must sell its products and services under designations specified by VWAG. VWoA must obtain approval of VWAG before allowing any dealer to use the Volkswagen name or trademarks. VWoA is obligated to promote the image of VWAG, protect VWAG's service and trademarks—even to the extent of prosecuting suits in VWAG's name, and to supply products and services under designations specified by VWAG.

VWoA must service all Volkswagen products brought to it, regardless of whether they were originally sold in VWoA's territory, and VWAG has complete discretion in determining the warranty terms VWoA offers to its customers. VWoA is barred from making any modification of VWAG's products.

VWAG provides free marketing assistance and advice to VWoA, to the extent VWAG deems appropriate. Sales summaries compiled by VWAG are to be used by VWoA in a manner the latter decides will be helpful in establishing and equipping its sales network. VWoA is required to keep VWAG fully informed of all aspects of its business. Either party can terminate the agreement but VWoA is entitled to no damages upon termination.

VWoA does not publish an annual report, but is listed on a consolidated financial sheet for the VW Group. The production, performance, purchasing and dividends of VWoA are all detailed as a part of the world-wide Volkswagen network. Eight of fourteen members of the board of directors of VWoA are directors of VWAG and West Ger-

man residents. Five of seven VWoA board meetings conducted in 1983 and 1984 were conducted in West Germany.

The above indicia bear comparison with those found in the case of *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, *cert. denied* (1979), 442 U.S. 928, 61 L. Ed. 2d 296, 99 S. Ct. 2857, in which plaintiffs brought a wrongful death action against the Kansas manufacturer of an airplane that crashed in Canada on its way from Illinois. Service was made upon Hartzog Aviation Co., the Illinois distributor of defendant's products. The supreme court held that the agreed facts showed that defendant engaged in sufficient activities in its own right and that it was unnecessary to decide whether Hartzog's activities standing alone would be a sufficient basis for jurisdiction. Defendant had entered into a written agreement allowing Hartzog to sell defendant's products in a given area of Illinois, and to perform all warranty, maintenance and repair service on defendant's planes regardless of whether they were sold by Hartzog. Defendant was empowered to inspect Hartzog's complete operation from time to time, and could terminate the sales agreement without notice under certain conditions. Defendant's marketing manager frequently visited Hartzog for the express purpose of promoting sales of defendant's aircraft, and defendant, together with Hartzog, had sponsored a slide show and dinner for sales prospects. Advertising appeared for at least five years in Chicago-area phone directories indicating where defendant's products could be purchased. The court found "defendant to be present and doing business in Illinois and [to be] amenable to service of process under sections 13.3 and 16 of the Civil Practice Act." (72 Ill. 2d 548, 559-60, 382 N.E.2d 252, 257.) Section 13.3 has now been recodified as section 2—204 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—204; see Ill. Ann. Stat., ch. 110, par. 2—204, Historical and Practice Notes, at 159 (Smith-Hurd 1983)), which provides in relevant part: "A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter provided by law." Thus the *Braband* court must have concluded that Hartzog was defendant's agent for service of process, or that the mode of service was otherwise a proper manner "provided by law."

■ Earlier, this court produced three separate opinions in the case. (*Braband v. Beech Aircraft Corp.* (1977), 51 Ill. App. 3d 296, 367 N.E.2d 118, *aff'd on other grounds* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, *cert. denied* (1979), 442 U.S 928, 61 L. Ed. 296, 99 S. Ct. 2857.) Justice Jiganti concluded that defendant was subject to

long-arm jurisdiction because it had committed a tortious act in Illinois. (*Braband v. Beech Aircraft Corp.* (1977), 51 Ill. App. 3d 296, 297-303, 367 N.E.2d 118, 120-24.) Presiding Justice Downing, dissenting, felt that the exercise of jurisdiction was improper (51 Ill. App. 3d 296, 307-13, 367 N.E.2d 118, 127-31), and Justice Stamos concluded that defendant was "amenable to service of process in Illinois by virtue of its contractual relationship with its distributor, Hartzog." (51 Ill. App. 3d 296, 303, 367 N.E.2d 118, 124 (Stamos, J., specially concurring).) In addition to defendant's activities discussed above, Justice Stamos noted that the distributorship arrangement disclosed that, while there were no overlapping directorships, defendant enjoyed extensive control over Hartzog. Hartzog was required to price the planes it sold, and to submit purchase orders for all airplanes to the defendant for its approval. Hartzog was also required to devote its full sales efforts to defendant's aircraft, and maintain records and advertise solely according to the directives of defendant. Hartzog had to perform all warranty maintenance and repair of defendant's aircraft no matter where they were purchased, and Hartzog could not move its place of business without obtaining prior written consent of defendant. Justice Stamos wrote:

> "Such evidence overwhelmingly demonstrates a series of corporate operations by [defendant], both directly and through its distributor, sufficient to establish its presence in the State of Illinois within the context of *International Shoe*. * * *
>
> Nor can it be doubted that these activities are sufficiently pervasive to justify the exercise of jurisdiction over a cause not directly related to [those] activities. The annual volume of business conducted by Hartzog does not appear of record. However, it is not disputed that the day-to-day sales and service of [defendant's] aircraft conducted by an apparently solvent firm, such as Hartzog Aviation, constitutes activity which may be fairly categorized as a substantial and systematic business operation. As previously noted, within this context, Beech controls Hartzog's sales and service policies, facilities, public relations, accounts and records, and marketing practices. This activity leaves small doubt that Beech has intentionally entered the Illinois market and is actively doing business in this State. Rather than use its own directly employed personnel, the corporation chose to enter into the State by acquiring broad supervisory control over a distributor-sales-corporation. The nature of this broad control and the extent to which it was exercised is [an] adequate basis for finding Hartzog to be the

agent of [defendant] and, thus, the proper and capable recipient of service of process upon [defendant]." 51 Ill. App. 3d 296, 306, 367 N.E.2d 118, 126 (Stamos, J., specially concurring).

While no two corporations have the same arrangements, and hence no two cases will be exactly alike, we conclude that, in accord with *Maunder v. DeHavilland Aircraft of Canada, Ltd.* (1984), 102 Ill. 2d 342, 466 N.E.2d 217, *cert. denied* (1984), 469 U.S. 1036, 83 L. Ed. 2d 401, 105 S. Ct. 511, and the concurring opinion in *Braband v. Beech Aircraft Corp.* (1977), 51 Ill. App. 3d 296, 303-07, 367 N.E.2d 118, 124-27, *aff'd on other grounds* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, *cert. denied* (1979), 442 U.S. 928, 61 L. Ed. 2d 296, 99 S. Ct. 2857, the circuit court was correct in ruling that VWoA was an agent for service of process of VWAG. As in *Maunder*, the subsidiary here is wholly owned by its parent, and exists predominantly to promote the sale and distribution of its parent's products in this country. As in *Braband*, VWoA has bound itself to sell VWAG's products within its territory and to maintain and repair VWAG's automobiles regardless of where they were sold. VWAG is empowered to terminate the importer agreement without prior notice if VWoA experiences business or financial difficulties. VWAG controls VWoA's choice of dealers, the designation of VWoA's products and services, stock levels, and methods of ordering. In addition it dominates the VWoA board and often conducts VWoA board meetings in its own domicile. VWoA is required by contract to keep VWAG apprised of all aspects of its business, and is authorized to prosecute trademark-infringement suits in VWAG's name. In short, the relationship between VWAG and VWoA is so close that it is certain that VWAG "was fully apprised of the pendency of the [action]" by delivery of the summons to VWoA. *Maunder v. DeHavilland Aircraft of Canada, Ltd.* (1984), 102 Ill. 2d 342, 353, 466 N.E.2d 217, 233, *cert. denied* (1984), 469 U.S. 1036, 83 L. Ed. 2d 401, 105 S. Ct. 511.

VWAG cites *People v. Parsons Co.* (1984), 122 Ill. App. 3d 590, 461 N.E.2d 658, and states "the court held that even though the foreign parent corporation held a majority of interest in the subsidiary corporation, placed its officers on the subsidiary's board of directors, transferred several of its employees to the subsidiary and financed and subsidized the subsidiary through loans, the parent's control over the subsidiary was not so pervasive that the parent was *'transacting business* in Illinois'." (Emphasis added.) However, the court stated:

> "Initially we emphasize that the State's allegation of Dickey-Grabler's control over Parsons relates only to the question

whether jurisdiction over Dickey-Grabler exists under the Illinois long-arm statute. [Ill. Rev. Stat. 1985, ch. 2—209, par. 110.] The State does not contend that Dickey-Grabler is 'doing business' in Illinois through its subsidiary, or that Parsons is a constructive agent for Dickey-Grabler for the purposes of service of process here." (122 Ill. App. 3d 590, 595, 461 N.E.2d 658, 663.)

Thus, the precise questions presented in this case were expressly excluded from consideration in *Parsons.*

VWAG has included several form franchise agreements in the appendix of its main brief, and argues that the obligations imposed on VWoA are no more onerous than those accepted by franchisees under contracts that are typically offered on a "take it or leave it" basis. In *Slates v. International House of Pancakes, Inc.* (1980), 90 Ill. App. 3d 716, 413 N.E.2d 457, the plaintiff was scalded with hot coffee while in a restaurant. He sued over the injuries, and attempted to serve the franchisor, a California corporation, by leaving process with a franchisee in Champaign, Illinois. The franchise agreement granted the franchisee the use of trademarks, trade names, insignia, labels or designs, trade secrets, formulas, methods of operation, and good will. (90 Ill. App. 3d 716, 727, 413 N.E.2d 457, 465.) The agreement provided that the restaurant would be called International House of Pancakes without any suffix or prefix. The restaurant could serve and sell only items expressly designated and approved in writing by defendant. The franchisee could purchase all flour and pancake mixes only from defendant or from suppliers approved in writing by it. The defendant was authorized to promulgate a manual binding on the franchisee that covered, *inter alia,* training and supervision, quality control, record keeping, inspection, hours of operation, advertising, preparation of food and relations with suppliers. The appellate court stated:

"The trial court in the instant case specifically stated that it felt the amount of control exercised by IHOP-Cal was customary in a franchise agreement. The court was not pursuaded that IHOP-Cal exercised such control over IHOP-Champaign so as to make the latter an agent for service of process. While we agree with the plaintiff that the agreement gives the defendant a high degree of supervision over the methods and operations of IHOP-Champaign, our examination of the agreement indicates that this control was not so all encompassing as to negate the express intention of the parties in the franchise agreement that no agency relationship was created. The trial court did not abuse its discretion." (90 Ill. App. 3d 716, 727, 413

N.E.2d 457, 466.)

While it may be true that franchise agreements typically provide for extensive supervision and control by the franchisor, there is one key distinction in the instant case. Franchisees, such as the one in *Slates*, are independent and can accept or reject the terms of the franchise. In the present case, VWoA was entirely owned by VWAG, and its board was dominated by VWAG officials. VWoA exercises no free will of its own in deciding whether to accept the importer agreement or any other aspect of its relationship with VWAG. Therefore, cases involving service on a franchisee do not provide a good analogy to the present case.

VWAG finally argues that if this court decides that service of process was valid, it could affect its right to remove the case to Federal court, because a removal petition must be filed within 30 days after service of the summons. (28 U.S.C.A. sec. 1446(b) (1973).) VWAG has not indicated that it would in fact seek removal or that there is any basis for Federal jurisdiction. In any event, VWAG could have removed the case to Federal court without waiving its right to challenge the service in that forum. (See *Zisman v. Sieger* (N.D. Ill. 1985), 106 F.R.D. 194, 196; 14A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure sec. 3738 (1985).) Therefore, this argument is without merit.

It is clear under Illinois law that "[w]here the facts indicate that one corporation so controls the affairs of another corporation that the two entities are essentially one, the court will disregard the corporate entities and hold service of process on one corporation effective as to the others." (*Rymal v. Ulbeco, Inc.* (1975), 33 Ill. App. 3d 799, 803, 338 N.E.2d 209, 213.) However, under prior decisions in this State, discussed above, it is not necessary that the relationship go so far. While courts in other jurisdictions have looked to whether a subsidiary is an alter ego or mere department of its parent, Illinois courts have avoided such labels in considering service of process. We conclude that the relationship between VWoA and VWAG was such that VWoA was properly found to be an agent for service of process of VWAG by operation of law. The decision of the circuit court denying VWAG's motion to quash is affirmed.

Affirmed.

. BILANDIC, P.J., and STAMOS, J., concur.