INTEGRATED BUSINESS INFORMA-TION SERVICE (PROPRIETARY) LIMITED, a proprietary company of the Republic of South Africa, formerly known as A.C. Nielsen Company (Proprietary) Limited, Plaintiff,

v.

The DUN & BRADSTREET CORPORA-TION, A Delaware corporation; A.C. Nielsen Company, a Delaware corporation; A.C. Nielsen International, Inc., a Delaware corporation; I.M.S. International, Inc., a Delaware corporation, Defendants.

No. 88 C 10795.

United States District Court, N.D. Illinois, E.D.

Jan. 18, 1989.

Paul J. Petit, Mitchell Bryan, Altheimer & Gray, Chicago, Ill., for plaintiff.

Krista Edwards, Sidley & Austin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On January 4, 1989, we dismissed the plaintiff's complaint in this case. In the one-page order that accompanied the dismissal, we summarized the reasons for our decision, but promised that a more detailed explanation would follow.

### I. Background

The plaintiff here, Integrated Business Information Services (Proprietary) Limited ("IBIS"), is a proprietary company organized under the law of the Republic of South Africa. According to its complaint, IBIS performs market research concerning the manufacture, sale, distribution and use of grocery and pharmaceutical products in South Africa. IBIS was formerly known as A.C. Nielsen Company (Proprietary) Limited ("ACN Proprietary") and was formerly owned by two of the defendants, A.C. Nielsen Company ("ACN") and A.C. Nielsen International, Inc. ("ACN International"). Both ACN and ACN International are Delaware corporations with their principal offices in Northbrook, Illinois, and are owned by another defendant, the Dun & Bradstreet Corporation ("D & B"), a Delaware corporation with its principal office in New York City. The exact corporate relationship between D & B, ACN, ACN International and ACN Proprietary is a little unclear from the materials before the Court. It is certain that ACN is a wholly-owned subsidiary of D & B, but it is not clear whether ACN International is a wholly-owned subsidiary of D & B or of ACN. Likewise, it is unclear whether ACN Proprietary was owned by ACN, by ACN International or perhaps by both. At any rate, D & B owns, in one fashion or another, ACN and ACN International; in turn, ACN and ACN International formerly owned ACN Proprietary. Because the presence of ACN International is superfluous to our legal analysis, we will treat ACN and ACN International as one entity and henceforth refer to them as ACN.

On January 30, 1987, apparently because of stockholder pressure on D & B to divest its holdings in South Africa, ACN entered into a Memorandum of Agreement to sell ACN Proprietary to its managers. Four provisions of that agreement are of importance to this case. First, paragraph 22.1 provided that the agreement would be governed by South African law. Second, paragraph 16.1 contained a non-competition agreement, which provided in part as follows:

> [T]he Seller and its associates shall not compete with the Company in the Republic for a period of 5 (five) years commencing on the effective date and shall not sell or supply any other person or company in the Republic any technology or information about the market in the Republic which may be used by such other person or Company in competition with the Company in the Republic.

Third, paragraph 1.1.12 defined "Seller and its associates" as "The Seller [that is, ACN] together with its subsidiary, holding and associated companies." Last, paragraph 22.5 contained an arbitration clause, which allowed any of the parties to require that a dispute be submitted to arbitration.

After the sale was completed, the management of ACN Proprietary changed the company's name to IBIS and apparently, all went well until May 1988. In that month, storm clouds first appeared on the horizon when D & B acquired the fourth and last defendant, I.M.S. International, Inc. ("IMS"). IMS, a Delaware corporation with its principal offices in New York City, is a market research company with operations in over sixty countries, including South Africa. D & B's acquisition of IMS and its South African operation, referred to here as IMS South Africa,[1] led some of D & B's institutional stockholders to threaten to sell their shares if D & B did not divest. Affidavit of Frank L. Alexander. Accordingly, D & B announced in October 1988 that it would divest itself of IMS South Africa by the end of 1988, and IMS apparently entered negotiations with IMS South Africa's managers.

But D & B's acquisition of IMS and IMS South Africa also caused problems with IBIS. After D & B announced IMS South Africa would be sold, IBIS informed IMS and ACN that it believed IMS South Africa was in competition with IBIS in the market research field in South Africa; therefore, IBIS claimed, ACN, D & B and IMS—the latter two as ACN's "associates"—were in violation of the non-competition clause. *See* Affidavit of John A. Scott ¶ 12; Letter of D. Munro, Nov. 25, 1988, Defendants' Exh. 2, Objections to Complaint. IBIS suggested that the only way to cure this breach would be for IMS to sell IMS South Africa to IBIS, but this suggestion was rejected. Letter of D. Munro. It is not clear what happened for the next month, but on December 23, 1988, attorneys for ACN wrote IBIS and stated that ACN was invoking the arbitration provision in their contract. *See* Letter of Deneys Reitz, Dec. 23, 1988, Exh. 3, Defendants' Objections to Complaint. IBIS acknowledged receipt of the demand the same day, but informed ACN that it was on its way to Chicago to seek an "urgent injunction." Letter of Munro Mittary Inc., Dec. 23, 1988, Exh. 4, Defendants' Objections to Complaint.

As promised, IBIS filed suit against D & B, ACN and IMS on Tuesday, December 27, 1988, seeking both an injunction against the sale of IMS South Africa and damages for the breach of the non-competition clause. That same afternoon, IBIS filed a motion for a temporary restraining order to enjoin the sale of IMS South Africa, and this Court set a hearing on the motion for 2:00 p.m. on Wednesday, December 28, 1988. Shortly before the hearing, D & B and IMS filed motions to dismiss under Federal Rules of Civil Procedure 12(b)(2), for lack of personal jurisdiction, and 12(b)(3), for improper venue. In addition, on the premise that we would dismiss IMS for lack of personal jurisdiction, ACN moved to dismiss the entire complaint for failure to join an indispensable party, namely, IMS. *See* Fed.R.Civ.P. 19. Alternatively, ACN moved to stay the case pending the outcome of arbitration.[2]

At the hearing, counsel for IBIS represented that his client would be willing to accept arbitration as long as the sale was stayed pending arbitration. We asked counsel for the defendants if his clients would be willing to agree to that; it was our hope that the status quo could be preserved while arbitration went on, without the exercise of our equitable powers. Defendants' counsel, however, appeared reluctant to wait even a few hours. Accordingly, we granted IBIS's motion for a TRO from the bench and enjoined the sale of IMS South Africa. On the day after the hearing and after further consultations with his clients, defendants' counsel represented to this Court that his clients would voluntarily agree not to consummate the

---

**1.** In its complaint, IBIS states that IMS's South African operation are conducted through two corporations owned by IMS. However, an affidavit filed by an IMS executive indicates that IMS's South African operation is merely a division of IMS. Affidavit of John A. Scott ¶ 7. The distinction does not matter for the purposes of this opinion.

**2.** ACN's alternative motion to stay was the first this Court learned of the arbitration clause, since IBIS had omitted the clause in its edited version of the contract. We find this omission disturbing.

sale of IMS South Africa until January 7, 1989, or earlier if the case was dismissed. As a result, we vacated the TRO that we had entered the day before.

Because both sides indicated that time was of the essence, we set an expedited briefing schedule at the hearing, and by January 3, 1989, briefing was complete. On January 4, 1989, we issued a one-page order dismissing the case. In the order, we summarized our conclusion: that we lacked personal jurisdiction over both D & B and IMS, and that D & B and IMS were indispensable parties. The reasoning underlying our conclusion is presented below.

## II.   Personal Jurisdiction

■ When we sit in diversity, we have personal jurisdiction over a party only if an Illinois state court would have such jurisdiction. *John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 401 (7th Cir.1987); *General Accident Insurance Co. v. Old Republic International Corp.*, 648 F.Supp. 634, 636 (N.D.Ill.1986). Under Illinois law, a court may acquire jurisdiction over a non-resident defendant under the Illinois long-arm statute, Ill.Rev. Stat. ch. 110, para. 2–209 (1987), or because the defendant is "doing business" in Illinois. *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill.2d 304, 312–13, 95 Ill.Dec. 496, 500–01, 489 N.E.2d 1360, 1364–65 (1986); *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 198–99, 57 Ill.Dec. 730, 733–32, 429 N.E.2d 847, 850–51 (1981). If we determine that personal jurisdiction is present under Illinois law, we must then determine whether the exercise of judicial power is consistent with the due process clause of the Fourteenth Amendment. *See John Walker*, 821 F.2d at 403. We note that the Illinois courts no longer equate the Illinois long-arm statute with the requirements of the due process clause. *See Cook Associates*, 87 Ill.2d at 197, 57 Ill.Dec. at 733, 429 N.E.2d at 850.

■ Under Illinois law, the party seeking to establish personal jurisdiction—in this case, IBIS—must make out a prima facie case. *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir.1988); *see also* 4 C. Wright & A. Miller, *Federal Practice &* *Procedure* § 1068 at 345 (2d ed.1987) (hereinafter "Wright & Miller"). The allegations in IBIS's complaint concerning jurisdiction are to be taken as true unless controverted by the defendants' affidavits, and any conflicts in the affidavits are to be resolved in IBIS's favor. *John Walker*, 821 F.2d at 402; *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987). This rule, however, applies only to the facts presented in the complaint or affidavits. Therefore, because "doing business" is a legal conclusion, and despite IBIS's protestations to the contrary, we need not conclude that D & B and IMS are doing business in Illinois just because IBIS's affidavits assert that it is so.

■ Clearly, because ACN has its principal place of buisness here in Illinois, we have personal jurisdiction over it, and the defendants concede as much. The more difficult questions concern D & B and IMS. IBIS does not contend that we have jurisdiction under the long-arm statute, nor does it contend that D & B and IMS are themselves doing business in Illinois. Rather, it contends that we have jurisdiction because D & B and IMS have whollyowned subsidiaries doing business in Illinois, including, in D & B's case, ACN. In general, the parent-subsidiary relationship is insufficient to confer personal jurisdiction. As we have noted recently, "In the absence of any evidence that can justify piercing the corporate veil, 'the mere relationship of parent corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state.'" *Uresil Corp. v. Cook Group, Inc.*, No. 88 C 6171, slip op. at 9 n. 5, 1988 WL 124335 (N.D.Ill. Nov. 14, 1988) (Aspen, J.) (quoting 2 J. Moore, W. Taggart & W. Wicker, *Moore's Federal Practice* ¶ 4.41–1[6] at 4–370 (1988); *see also* 4 Wright & Miller § 1069 at 363 (jurisdiction over the local subsidiary does not confer jurisdiction over the foreign parent "if the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent").

However, the Illinois courts have held that in certain circumstances, jurisdiction over the subsidiary translates into jurisdiction over the parent. For example, in *Maunder v. DeHavilland Aircraft of Canada, Ltd.*, 102 Ill.2d 342, 80 Ill.Dec. 765, 466 N.E.2d 217, *cert. denied*, 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984), the parent corporation was a Canadian aircraft manufacturer, while the wholly owned subsidiary was a Delaware corporation with its principal place of business in Illinois. The subsidiary's sole business was the sale of the parent's aircraft parts, and the parent had included the subsidiary in its advertisement in American aviation journals. In addition, the subsidiary's operating manual stated that the subsidiary was controlled by the parent and operated under the parent's Vice President of Sales. *Id.* at 346–47, 80 Ill.Dec. at 767, 466 N.E.2d at 219. Under the circumstances of the case, the Illinois Supreme Court concluded that the parent was "[c]learly ... doing business in Illinois." *Id.* at 352, 80 Ill.Dec. at 770, 466 N.E.2d at 222.

Similarly, in *Schlunk v. Volkswagenwerk Aktiengesellschaft*, 145 Ill.App.3d 594, 105 Ill.Dec. 39, 503 N.E.2d 1045 (1st Dist.1986), *aff'd on other grounds*, —— U.S. ——, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988), the parent was the German automobile manufacturer ("VWAG") and the subsidiary ("VWoA") was the exclusive importer and distributor of VWAG products sold in the United States. Technically, the question in *Schlunk* was not whether VWAG was subject to the jurisdiction of the court, but whether service on VWoA constituted valid service on VWAG. However, the court noted that the jurisdiction and the service issues both turned on whether the parent was doing business in Illinois, and the "answer to this question usually depends upon the relationship between parent and subsidiary." *Id.* at 601, 105 Ill.Dec. at 43, 503 N.E.2d at 1049. VWoA was concededly doing business in Illinois, and the Illinois Appellate Court concluded that VWAG was doing business

in Illinois by virtue of its relationship with VWoA. In reaching this conclusion, the Court relied, *inter alia*, on the following facts:

> VWoA has bound itself to sell VWAG's products within its territory and to maintain and repair VWAG's automobiles regardless of where they were sold. VWAG is empowered to terminate the importer agreement without prior notice if VWoA experiences business or financial difficulties. VWAG contols VWoA's choice of dealers, the designation of VWoA's products and services, stock levels, and methods of ordering. In addition it dominates the VWoA Board and often conducts VWoA board meetings in its own domicile. VWoA is required by contract to keep VWAG apprised of all aspects of its business, and is authorized to prosecute trademark infringement suits in VWAG's name.

*Id.* at 606, 105 Ill.Dec. at 47, 503 N.E.2d at 1053.

The situation in the present case is different. We will consider D & B first. To be sure, D & B has a number of wholly owned subsidiaries doing business in Illinois, including ACN.[3] Moreover, in the case of ACN at least, and we would guess this is true of other D & B subsidiaries, there is an overlap of executives and directors. For example, three officers or directors of D & B serve on ACN's nine-member board of directors, and two executive officers of ACN are also executive officers of D & B. Affidavit of Mary A. Dresdow ¶¶ 6, 8. Still, this does not approach the level of control found in *Maunder* or *Schlunk*. Unlike the subsidiaries in those cases, ACN does more than merely service its parent's products. Indeed, it could not, since D & B exists only to own stock; even D & B's Form 10–K, heavily relied on by IBIS, indicates that D & B is only a "non-operating holding company." D & B's 1987 Form 10–K at 1, attached as Exh. A to Plaintiff's Memo in Opposition. In addition, ACN and the other D & B

---

**3.** Other D & B subsidiaries that are qualified to do business and that apparently are doing business in Illinois include the Dun–Donnelley Publishing Corporation, the Reuben H. Donnelley Corporation and Thomas Cook Travel, Inc. Second Affidavit of Charles F.G. Raikes ¶ 14.

subsidiaries appear to maintain relatively independent existences. Affidavits submitted by executives at both D & B and ACN indicate that D & B exerts no control over ACN's everyday authority and that ACN solicits its own business, negotiates its own contracts, establishes its own prices and in general makes independent business decisions in an effort to reach its objectives. Second Affidavit of Charles F.G. Raikes ¶¶ 6, 11; Affidavit of Mary A. Dresdow ¶¶ 5, 12. A D & B executive also states that the other D & B subsidiaries doing business in Illinois have the same independence as ACN. Second Affidavit of Charles F.G. Raikes ¶ 14. Obviously, these declarations of independence are somewhat self-serving and may well be overstated; we have little doubt that D & B exercises some control over its subsidiaries.[4] Yet from the materials before us, it seems apparent that D & B does not exercise the amount of control seen in *Maunder* or *Schlunk.* We conclude, therefore, that Illinois courts would not exercise personal jurisdiction over D & B. Since they would not, we cannot.

■ The case for exercising personal jurisdiction over IMS is not even as strong. IMS has only two subsidiaries qualified to do business in Illinois, and apparently only one of them is in good standing. *See* Affidavit of Terezia Rabai ¶ 8. IBIS presents no other materials that would suggest IMS and its subsidiaries are doing business in Illinois, and IMS indicates that the two subsidiaries are preparing to give up their authorization to do business in Illinois. Affidavit of John A. Scott ¶ 6. Under these circumstances, the exercise of personal jurisdiction over IMS is also improper.

Since we conclude that Illinois law does not give us personal jurisdiction over either D & B or IMS, we need not consider whether the exercise of personal jurisdiction would offend the due process clause or whether venue would be proper with regard to D & B or IMS.

### III. Discovery on the Personal Jurisdiction Issue

■ IBIS argues that even if the materials currently before the Court are insufficient to support the exercise of personal jurisdiction over D & B or IMS, we should permit discovery on the issue. IBIS cites a number of cases where discovery was permitted on the jurisdictional issue, *see, e.g., Surpitski v. Hughes–Keenan Corp.,* 362 F.2d 254 (1st Cir.1966), and it is possible that materials unearthed in discovery would lead us to revise our conclusion that neither D & B nor IMS is doing business in Illinois. However, in all of the cases that IBIS cites, the plaintiffs sought damages, which would have been awarded at the end of litigation. Here, by contrast, IBIS wishes us to impose a preliminary injunction on the defendants at the outset of the case. The preliminary injunction is probably the most powerful weapon that a federal court can wield, *see Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1433 (7th Cir.1986), and if we must err, it seems better to err on the side of lack of personal jurisdiction. Moreover, even if we allowed discovery, we could not prevent D & B and IMS from consummating the sale while discovery was taken, since we have concluded from the materials currently before us that we lack personal jurisdiction over them.[5] For these reasons, IBIS's request for discovery was denied.

### IV. Indispensable Parties Under Rule 19

■ As we stated previously, ACN moved under Rule 19 of the Federal Rules of Civil Procedure to dismiss the entire complaint for failure to join an indispensable party, namely, IMS. Although ACN did not ask us to consider whether D & B was an indispensable party, a court may consider the Rule 19 issue on its own. *See Pickle v. International Oilfield Divers, Inc.,* 791 F.2d 1237, 1242 (5th Cir.1986), *cert. denied,* 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987); *Water Technologies Corp. v. Calco, Ltd.,* 576 F.Supp. 767, 771

---

4. We note, for example, that D & B is able to force its subsidiaries to divest from South Africa.

5. As we explain in the next section, an injunction directed against ACN would not be effective against D & B or IMS.

(N.D.Ill.1983); 7 Wright & Miller § 1609 at 138–39. Indeed, the language of Rule 19 seems to require a court to consider the issue: "[T]he court *shall* determine whether in equity and good conscience the action should proceed among the parties before it." Fed.R.Civ.P. 19(b) (emphasis added). Therefore, we also considered whether D & B was an indispensable party.

■■■ We have observed before that Rule 19 sets out a two-step procedure for deciding whether a party is indispensable. *See Freeman v. Liu,* 112 F.R.D. 35, 40 (N.D.Ill.1986). First, the Court must decide under Rule 19(a) whether D & B or IMS are "persons to be joined if feasible." Rule 19(a) provides three alternative tests to determine whether D & B or IMS are such persons, but we only need consider the first. Under this test, a person should be joined if feasible if "in the person's absence complete relief cannot be accorded among those already parties." In this case, complete relief is impossible without D & B and IMS, because an injunction against ACN alone would not bind them. In general, a court cannot enjoin a person unless he is party to a suit, *see Chase National Bank v. City of Norwalk, Ohio,* 291 U.S. 431, 436, 54 S.Ct. 475, 477, 78 L.Ed. 894 (1934); *Herrlein v. Kanakis,* 526 F.2d 252, 253–54 (7th Cir.1975), or at least subject to the jurisdiction of the court, *see In re Warden of the Wisconsin State Prison,* 541 F.2d 177, 179 (7th Cir.1976). Since we have already decided that we lack jurisdiction over D & B and IMS and that they therefore cannot be parties to this suit, we cannot enjoin them directly.

However, Rule 65(d) provides a small exception to this rule. Under Rule 65(d), an injunction is binding not only upon the parties to the suit, but also upon "their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed.R.Civ.P. 65(d). At first glance, it might seem that if D & B or IMS were ACN's agents or were in active concert or participation with ACN (the other categories clearly do not apply), an injunction against ACN would also bind D & B and IMS. However, this provision of Rule 65(d) has only been applied to those non-parties who are aiding and abetting a party who is violating an injunction. As Justice Jackson explained, the purpose of Rule 65(d) is to ensure that "defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding." *Regal Knitwear Co. v. National Labor Relations Board,* 324 U.S. 9, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945); *see also Illinois v. United States Department of Health & Human Services,* 772 F.2d 329, 332 (7th Cir.1985). Thus, various courts have held that unless a party violates the injunction, a non-party cannot be held under Rule 65(d), even though the non-party is doing what the injunction prohibits. *See Herrlein,* 526 F.2d at 254; *see also United Pharmacal Corp. v. United States,* 306 F.2d 515, 518 (1st Cir.1962). *See generally* Annotation, *Who, Under Rule 65(d) of Federal Rules of Civil Procedure, Are Persons "In Active Concert or Participation" With Parties to Action So As To Be Bound By Order Granting Injunction,* 61 A.L.R.Fed. 482, 485–86 (1983). In this case, ACN could not directly violate the injunction itself, because it would not be the party selling IMS South Africa. Since ACN cannot violate the injunction itself, D & B and IMS could never aid and abet ACN in the violation of the injunction even if they sold IMS South Africa. It follows that D & B and IMS cannot be bound under the injunction. *Cf. Herrlein,* 526 F.2d at 254 (defendants were enjoined from selling certain pet food products; non-party, who had purchased assets from defendants before suit was brought, could not be held liable, even though it sold the enjoined products, because defendants were not held liable for violating injunction; this was true even though one of defendants was new manager of non-party).

There are two other points to be made concerning the Rule 19(a) analysis. First, we note that complete relief is impossible in this case only because we lack jurisdiction over both D & B and IMS. If we had jurisdiction over IMS but not D & B, we

obviously could enjoin IMS from selling IMS South Africa. Similarly, if we had jurisdiction over D & B alone, we could enjoin D & B and by doing so bind IMS, since the record indicates that IMS will do D & B's bidding with regard to divesting from South Africa. But since we have jurisdiction over neither, any injunction we issue will be meaningless.

Second, our discussion here has focused on injunctive relief, even though IBIS's complaint also includes a count for damages. The presence of the damages count, however, does not change our analysis. If ACN could be liable in damages for the actions of D & B and IMS (a question we do not consider), this would only be incomplete relief. The more important relief, the relief both sides are most concerned about, is the injunctive relief. Because that relief is so important, we would guess that IBIS will pursue it in another forum. To decide the damages issue here would therefore only cause piecemeal litigation.

Thus, because complete relief would be impossible without them, we conclude D & B and IMS are persons to be joined if feasible under Rule 19(a). But since they cannot be joined, that brings us to the second step of the Rule 19 inquiry, "whether in equity and good conscience the action should proceed among the parties before [us], or should be dismissed." Rule 19(b) sets out four factors that a court should consider in making this determination:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Although this list is not exhaustive, *see Freeman v. Liu,* 112 F.R.D. at 40, and although no one factor is determinative, *see id.,* we think that the third and fourth factors weigh heavily in favor of dismissal. As we noted above, any injunction without D & B and IMS would not prevent the sale of IMS South Africa, and, therefore, the judgment would not be adequate. In addition, because all defendants are incorporated in Delaware, the United States District Court for the District of Delaware would have personal jurisdiction over all defendants. Thus, IBIS will have another forum if we dismiss for nonjoinder.[6] Given these two factors, D & B and IMS must be considered indispensable parties and dismissal of the entire complaint was appropriate.

### V. Conclusion

For the foregoing reasons, on January 4, 1989, we dismissed D & B and IMS for lack of jurisdiction. Because D & B and IMS were indispensable parties, we then dismissed the entire complaint.

---

**6.** A district court in the Southern District of New York probably would have jurisdiction as well, since both D & B and IMS have their principal place of business there, and ACN probably is doing business in New York.