Dana LAMB, a minor, By and Through his mother and next friend, Jeanne F. DONALDSON, and Jeanne F. Donaldson, individually, Plaintiffs,

v.

VOLKSWAGENWERK AKTIENGE-SELLSCHAFT, a German corporation, and Volkswagen of America, a New Jersey corporation, Defendants.

No. 82–1692–CIV–HASTINGS.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 7, 1985.

Charles R. Stack, Coral Gables, Fla., for plaintiffs.

Peter L. Wechsler, Miami, Fla., for defendants.

## ORDER ON DEFENDANT'S MOTION FOR RECONSIDERATION

HASTINGS, District Judge.

The issue of the Court's jurisdiction over one of the Defendants again comes before the Court in the Motion of Defendant, VOLKSWAGENWERK AKTIENGE-SELLSCHAFT (VWAG), for Reconsideration of Court's Order of October 23, 1984, Denying VOLKSWAGENWERK AK-TIENGESELLSCHAFT's Motion to Dismiss, to Quash Process, and to Quash Service of Process (Special Appearance). Both parties have fully briefed this issue.

■ Plaintiffs first challenge Defendants' right to ask the Court to reconsider its October 23, 1984 Order on Pending Motions, as Rule 60(b) of the Federal Rules of Civil Procedure does not authorize a litigant to ask for reconsideration of a legal issue. Whether or not the language of Rule 60(b) specifically permits reconsideration of a legal issue is debatable. It cannot, however, be disputed that where a timely request to reconsider a prior ruling is made and based on an erroneous applica-

tion of the applicable law, reconsideration of such previous ruling is properly within the Court's broad discretion. Defendant VWAG has filed a timely Motion for Reconsideration claiming that this Court has made a mistake in applying the appropriate law to the question of whether service of process on VWAG was sufficient and valid. The Court shall exercise its discretion and grant VWAG's request to have the Court reconsider its October 23, 1984 Order. Unfortunately for Defendant, however, such reconsideration shall change nothing. For the reasons which follow, the Court shall ratify and affirm its prior findings that process and service of process were sufficient so as to ensure the Court's jurisdiction over VWAG.

The pertinent provision of the Court's October 23, 1984 Order reads as follows:

Defendant VOLKSWAGENWERK AKTIENGESELLSCHAFT's Motion to Dismiss, to Quash Process, and to Quash Service of Process (Special Appearance) (Docket No. 10) is DENIED. By way of a Supplement to Plaintiffs' Memorandum of Law in Opposition to Defendant VOLKSWAGENWERK AKTIENGESELLSCHAFT's Motion to Dismiss, to Quash Process, and to Quash Service of Process, Plaintiffs presented voluminous documents bearing on the degree of control that Defendant VOLKSWAGENWERK AKTIENGESELLSCHAFT (VWAG) exercises over Co-Defendant VOLKSWAGEN OF AMERICA, INC. (VWOA). This Court finds that the control exercised by VWAG over VWOA is a sufficient basis for a finding either that VWAG is indeed transacting business in the State of Florida or alternatively that its subsidiary, VWOA, is in reality acting as agent for VWAG's separate business within the State. Additionally, it is not disputed and the Court finds that VWOA provided VWAG with actual notice of this litigation. Neither is it disputed that C.T. Systems, the company served with VWAG's copy of the Complaint and Summons, is the appointed agent of VWOA, employed to accept service of process locally. Since Plaintiffs properly effectu-

ated process and service of process on VWAG through C.T. Systems and VWOA, the Court's personal jurisdiction over the principal, VWAG, is proper.

Defendant VWAG makes two substantive assertions in its Memorandum of Law in support of its Motion for Reconsideration of the foregoing Order: (1) The Order fails to recognize the weight and authority of the provisions of the "Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters" as said Convention relates to the Plaintiffs' service of process on VWAG; and (2) VWAG has not appointed any process agent, and specifically not appointed VWOA, as an agent for service of process in such a civil action, and there is otherwise insufficient evidence to support a finding that VWOA is acting as the agent of VWAG for purposes of effecting valid service of process on VWAG.

## THE HAGUE CONVENTION

The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 UST 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163, (hereinafter The Hague Convention), is a treaty which was agreed to and signed by various countries at the Hague, Netherlands, in 1965. The treaty became effective in the United States on February 10, 1969, and in the Federal Republic of Germany (West Germany) on June 26, 1979. VWAG is a West German corporation.

The introduction to The Hague Convention proclaims that its purposes are "to ensure that judicial and extrajudicial documents TO BE SERVED ABROAD shall be brought to the notice of the addressee in sufficient time," and "to improve the organization of mutual judicial assistance FOR THAT PURPOSE by simplifying and expediting the procedure." [Emphasis supplied.] Article 1 provides that The Hague Convention "shall apply in all cases, in civil or commercial matters, where there is occasion TO TRANSMIT A JUDICIAL OR EXTRAJUDICIAL DOCUMENT FOR SER-

VICE ABROAD." [Emphasis supplied.] Pursuant to the terms of Article 3, service of process on a foreign corporation abroad is to be accomplished by serving a Central Authority which is designated by the foreign state. Article 10 of The Hague Convention does allow for alternative methods of service where it provides that the treaty shall not interfere with the freedom of judicial officers, officials, or other competent persons of the State of origin to effect service of judicial documents by mail or by direct service through foreign officials or competent persons, provided that the State of destination does not object to these alternative methods of service. In accordance with Article 21, the Government of the Federal Republic of Germany has objected to the alternative methods of transmission specified in Article 10, and therefore, these alternative methods may not be used to accomplish service of process *in the objecting country.*

Defendant VWAG argues that since West Germany has objected to the alternative methods in Article 10, the only way to serve a German corporation is to serve the designated Central Authority in that country, and that since process was not submitted to such designated Central Authority in compliance with the provisions of The Hague Convention, the service of process on VWAG in the instant case must be quashed. Plaintiffs do not argue that the provisions of The Hague Convention were complied with in this case; they simply contend that the Convention's provisions are not applicable in this case, since the Defendant VWOA is the alter ego, and therefore the agent, of Defendant VWAG in Florida for the purpose of service of process. Having carefully reviewed the language in the various provisions of The Hague Convention, this Court remains entirely persuaded by the arguments of Plaintiffs.

By its terms, The Hague Convention is applicable only to attempts to serve process in foreign countries. Both the introduction and Article 1 refer to the transmission of judicial documents, in civil matters, for service ABROAD. The purpose of The Hague Convention is to simplify the procedure for serving judicial documents abroad to ensure that the party to be served in the foreign country will receive notice in timely fashion. There is nowhere among the provisions of The Hague Convention any indication that it is to control attempts to serve process on foreign corporations or agents of foreign corporations within the State of origin. To ask a Court to find such an indication within the meaning of the Convention's language is to ask that a new treaty be fashioned by the Court. A Court may interpret but should not write the law. If the service of process in the instant case had been attempted directly on VWAG in the Federal Republic of Germany, then the provisions of The Hague Convention would have to be complied with. In this case, however, service of process was entirely accomplished within the United States by serving the agent of the Defendant VWAG; the provisions of The Hague Convention are simply inapplicable. *See Ex Parte Volkswagenwerk Aktiengesellschaft,* 443 So.2d 880 (Ala.1983).

In its October 23, 1984 Order, this Court found "that the control exercised by VWAG over VWOA is a sufficient basis for a finding either that VWAG is indeed transacting business in the State of Florida or alternatively that its subsidiary, VWOA, is in reality acting as agent for VWAG's separate business within the State." The Court now further holds that The Hague Convention is inapplicable in determining the validity of service of process under a common law agency theory when the foreign corporation or its agent is located and served within the United States.

### THE AGENCY OF VWOA

Since The Hague Convention is inapplicable, the Court's inquiry is mainly limited to the issue of whether there is sufficient evidence to support the Court's finding that VWOA can be considered the agent of VWAG for the purpose of effecting valid service of process on VWAG, and if so, whether service of the summons and com-

plaint on VWOA through C.T. Systems may be considered good and sufficient service on VWAG. After careful reconsideration of all of the facts and evidence before the Court, the Court does find the evidence overwhelming and the service of process on VWAG quite proper.

In *Richardson v. Volkswagenwerk, A.G. v. Stephenson,* 552 F.Supp. 73 (W.D.Mo. 1982), the District Court examined what would be necessary in order for a litigant to establish valid service of process on VWAG under this common law agency theory:

> Plaintiffs have the burden of proving proper service of process once it is contested. As such, plaintiffs must establish the agency of the person or entity receiving process. *Amen v. City of Dearborn,* 532 F.2d 554, 557 (6th Cir. 1976). The parent-subsidiary relation alone ordinarily does not establish the necessary agency for making service on one through the other. *Jones v. VWOA,* 82 F.R.D. 334, 335 (E.D.Tenn.1978); 4 Wright & Miller, *Federal Practice and Procedure* § 1104 (1969). The parties seeking to prove proper service must at least show that the parent exercises SUCH A DEGREE OF CONTROL OVER THE SUBSIDIARY THAT THE ACTIVITIES OF THE SUBSIDIARY ARE THE ACTIVITIES OF THE PARENT or show THAT THE SUBSIDIARY'S ACTIVITIES ARE CONTROLLED BY THE PARENT TO THE EXTENT THAT THE SUBSIDIARY IS ONLY A DEPARTMENT OF THE PARENT. (Citations omitted.)

*Richardson,* 552 F.Supp. at 79. [Emphasis supplied.]

In the instant case, Plaintiffs served VWAG by serving VWOA through C.T. Systems. As the Court previously found, it is not disputed that C.T. Systems is the appointed agent of VWOA, employed to accept service of process locally. Defendant VWAG claims that neither C.T. Systems nor VWOA can be considered proper agents of VWAG for purposes of service of process. Since the agency of C.T. Systems

for purposes of service of process on VWOA is not disputed, this Court remains firm in its belief that if VWOA can be considered the alter ego of VWAG, then the service of VWAG's summons and complaint through C.T. Systems would indeed be valid. The only real issue, therefore, is whether VWOA can be considered the agent of VWAG for purposes of effecting service of process on VWAG.

In support of its original Motion to Dismiss and of its Motion for Reconsideration, Defendant VWAG has submitted the Affidavit of Toens Bruening Gen. Brinkmann, a member of the International Law Department of VWAG. The Affidavit attempts to demonstrate that VWAG does not exercise such control over VWOA as to make VWOA a department of VWAG or as to make VWOA's activities the activities of VWAG. Mr. Brinkmann states that VWAG does not control or supervise the daily business affairs of VWOA, that VWAG does no business in the State of Florida, that VWOA is adequately capitalized, has a full staff of employees, and maintains its own bank accounts, books, and records, and that VWOA sets its own policies and operates its own business separate and apart from VWAG. In further support of its argument that VWAG does not maintain the requisite degree of control over VWOA to support a finding of agency, the Defendant cites three recent district court decisions finding that VWOA was not the alter ego of VWAG for purposes of service of process.

The same three district court decisions were considered by the Alabama Supreme Court in *Ex Parte Volkswagenwerk Aktiengesellschaft,* 443 So.2d 880 (Ala.1983), a case which was nearly identical to the case at bar, when deciding the very same issue before this Court:

> Three recent cases cited by petitioner, *Utsey v. Volkswagenwerk, A.G.,* Nos. 80–1620–9, 80–1621–9 (D.S.C. Sept. 18, 1981); *Hamilton v. Volkswagenwerk, A.G.,* Nos. 81–01–L, 80–594–D (D.N.H. June 10, 1981); and *Richardson v. Volkswagenwerk, A.G.,* 552 F.Supp. 73

(W.D.Mo.1982), as standing for the proposition that VWAG and VWoA are separate and distinct entities, and that VWAG cannot be served through VWoA, are distinguishable. The court in each case established that the controlling issue was whether the plaintiff had submitted sufficient proof of a high degree of control over VWoA by VWAG. In each case, the plaintiff failed to present evidence to counter the affidavit submitted by the defendant in support of the contention that VWoA and VWAG were separate corporations with no intertwining of operations. This is not true in the instant case.

443 So.2d at 884–885. Neither is it true in the case before this Court. The actual holdings of the three cited cases distinguishes them in a decisive manner from the case at bar. In each of these cases, VWAG introduced affidavits of VWAG attorneys denying that VWAG exercised a high degree of control over VWOA. In each of these cases, the court found that the plaintiff had failed to present sufficient evidence showing the requisite degree of control to overcome the assertions made in the affidavit and support the allegation of agency. In contrast to these cases, Plaintiffs in this case have produced, just as in *Ex Parte Volkswagenwerk Aktiengesellschaft,* voluminous documents and overwhelming evidence bearing on the degree of control that VWAG exercises over VWOA. In making its October 23, 1984 ruling, the Court found that these documents not only controverted the Affidavit submitted by VWAG, but also that they established that VWAG exercised the degree of control necessary to uphold service upon VWOA as an agent of VWAG. In order to clarify this finding, which the Court now affirms, the Court believes it prudent to identify some of the documents on which it relied.

Among the papers submitted by Plaintiffs in order to show that VWAG possesses and exercises the requisite control over VWOA are pleadings from a number of trademark infringement cases litigated in this Court by VWAG. These pleadings are characterized by assertions made by VWAG regarding the following: the establishment of a nationwide network of franchised Volkswagen dealers; the control and supervision exercised by VWAG over such dealers in order to ensure adherence to VWAG quality standards governing the sale of goods and services; strict control by VWAG over the use of VWAG trademarks; and lastly, the substantial benefits accruing to VWAG as a result of doing business in the United States.

In addition to these pleadings, Plaintiffs have submitted a copy of an "Importer Agreement" dated December 31, 1973, which governs the relationship between VWAG and VWOA. Although this agreement contains language prohibiting VWOA from acting as the agent of VWAG, the Court finds the following provisions to be more persuasive in demonstrating the pervasive control exercised by VWAG over the operations of VWOA. In these provisions, VWAG is referred to as "VW" and VWOA is referred to as "Importer":

> In the conduct of its business, Importer will safeguard and in every possible way promote the interests of VW and the favorable reputation of VW Products. Importer will arrange for the efficient promotion of VW Products; and in such promotion, ..., it will give due consideration to all reasonable directives and suggestions of VW relating thereto.
>
> ... Importer will appoint at locations to be approved by VW such number of dealers as may correspond to the requests of VW ... Importer will forthwith communicate to the dealers appointed by it all directives and suggestions of VW ... Importer will see to it that the dealers appointed by it ... will give due consideration to the said directives and suggestions.
>
> Importer shall furnish to VW its orders for VW Products for the periods and at the time or times determined by VW and shall use therefor the forms prescribed by VW. All such orders may be accepted or rejected by VW in whole or as to any part thereof....

VW shall not be under any liability whatsoever toward Importer for failure to deliver under, or for delay in making delivery pursuant to, orders of Importer accepted by VW ...

Importer shall maintain a place of business for its Volkswagen business located, installed and equipped in a manner reasonably satisfactory to VW.

At and around its premises Importer shall conspicuously display a sufficient number of Volkswagen signs in accordance with the directives of VW, and Importer shall use for its Volkswagen business only stationery and business forms printed in accordance with the requests of VW....

Importer will employ a number of competent office employees and business fieldmen sufficient in the opinion of VW to secure supervision of solicitation by dealers appointed by it of all potential customers for VW Products in the territory....

... Importer will employ such number of competent office employees and technical fieldmen as, in the opinion of VW, may be required to assure prompt and satisfactory customer's service ...

In the installation and operation of the repair shops of all dealers appointed by Importer, due consideration shall be given to the directives and suggestions which may from time to time be issued by VW

... In the event of any change or modification with respect to any VW Products, ... VW may request that Importer make such changes or refrain from making such changes of VW Products as may from time to time be prescribed by VW....

VW shall sell VW Products to Importer at such prices and upon such terms as may from time to time be established by VW for its sales ... In the event of any increase of the prices established by VW, Importer agrees to pay such increased prices for all VW Products ...

Title to the VW Products sold shall remain with VW and VW shall have the right to retake and resell the VW Products sold until VW shall have collected actual cash in the full amount of the purchase price therefor.

The procedure for the processing and disposition of warranty claims and for the return and disposition of parts claimed to be defective shall be as from time to time established by VW ...

... VW shall have the right ... to inspect Importer's records and accounts ... Importer will report to VW, in accordance with VW's requests, for instance, about market conditions, sales performance, inventories and estimates of requirements, and will submit to VW its yearly and interim financial statements.

Importer shall use the word "Volkswagen," the letters "VW" and any other trademark, service mark or trade name now or at any time hereafter used or claimed by VW exclusively in connection with the sale and servicing of VW Products....

Importer shall take at its own expense, but in the name of VW, all measures, including the institution and prosecution of lawsuits which may be reasonably required to prevent infringements within the territory ...

VW shall have the right at any time forthwith to bring about the prior termination of this Agreement ...

This Agreement has been entered into by VW in reliance upon the representation that the following persons, and no other persons, are the beneficial owners of Importer in the following proportions:

Volkswagenwerk Aktiengesellschaft
Wolfburg, Germany
One hundred percent

The place of performance for all of the obligations of both parties hereto is Wolfsburg [West Germany]....

██ These and the other documents presented by Plaintiffs which bear on the degree of control that VWAG exercises over VWOA satisfy this Court that Plaintiffs have met their burden of proof. The "Importer Agreement" indicates , that

VWAG and VWOA are formally structured as two separate corporations, but also that, since VWAG owns all of the issued and outstanding shares of VWOA, VWOA is a wholly-owned subsidiary of VWAG. As previously mentioned, a parent-subsidiary relationship ALONE will not ordinarily establish the necessary agency for serving process on the parent through the subsidiary. In the case of VWAG and VWOA, however, as the documents demonstrate, the relationship goes far beyond that of simply parent and subsidiary. The provisions quoted above prove that the authority of VWAG is absolute, and that, in a very real sense, VWAG determines on a day-to-day basis exactly how VWOA is to operate. Plaintiffs have shown, to the satisfaction of this Court, that VWAG exercises such a degree of control over VWOA that VWOA's activities are those of VWAG, or, alternatively, that VWOA's activities are controlled by VWAG to the extent that VWOA is very close to nothing more than a department of VWAG. In any event, the Court finds and holds that the parent-subsidiary relationship between VWAG and VWOA is such as to make it more than reasonably certain that VWOA will turn over the process served on it for VWAG to VWAG, and that the service of process on VWOA in this cause was sufficient to give adequate notice to the parent corporation, Defendant VOLKSWAGENWERK AKTIENGESELLSCHAFT. In this age of multinational corporations doing business in almost every country of the world, formal corporate structures should not be used to shield the realities of underlying parent-subsidiary relationships. *Ex Parte Volkswagenwerk*, Concurring opinion of Chief Justice Torbert.

Finally, Defendant VWAG cites in its Memorandum numerous cases involving the significance of VWAG's appointment of VWOA as its agent for receiving service of process in actions arising under the National Traffic and Motor Vehicle Safety Act of 1966, and generally holding that such appointment does not result in an agency relationship to receive service of process in cases arising outside the scope of that Act.

Defendant apparently raises this issue in the belief that the Court based its October 23, 1984 finding, at least in part, on VWAG's appointment of VWOA as agent for service of process under this Act. A careful reading of the Court's previous Order shows that such belief is unfounded. The Court based its previous ruling, as affirmed by this Order, on a set of facts and circumstances which are unaffected by the Act and the cited cases. The National Traffic and Motor Vehicle Safety Act of 1966 has no relevance to an analysis of either of this Court's Orders.

The Court having carefully considered the memoranda submitted by the parties and for the reasons enumerated above, it is therefore

ORDERED AND ADJUDGED that the Motion of Defendant, VOLKSWAGENWERK AKTIENGESELLSCHAFT, for Reconsideration of Court's Order of October 23, 1984, Denying VOLKSWAGENWERK AKTIENGESELLSCHAFT's Motion to Dismiss, to Quash Process, and to Quash Service of Process is GRANTED. The October 23, 1984 Order is, however, for all of the reasons enumerated in this ruling affirmed in all respects.