**Fred GEICK, Plaintiff,**

**v.**

**AMERICAN HONDA MOTOR COMPANY, a corporation, and Honda Motor Company, Ltd., a Japanese corporation, Defendants.**

**No. 86–1146.**

United States District Court, C.D. Illinois, Peoria Division.

July 21, 1987.

Richard L. Steagall, Nicoara & Steagall, Peoria, Ill., for plaintiff.

Keith G. Phoenix, St. Louis, Mo., Robert V. Dewey, Jr., Peoria, Ill., for defendants.

### ORDER

MIHM, District Judge.

Plaintiff, Fred Geick, brought this action against the Defendants, American Honda

Motor Company, Inc., (hereafter American Honda) and Honda Motor Company, Ltd. (hereafter Honda Limited) alleging a claim of strict products liability. The suit was filed pursuant to 28 U.S.C. § 1332, diversity jurisdiction. Presently before this Court is Honda Limited's Motion to Quash Service.

Geick is an Illinois citizen. American Honda is a corporation organized and existing under the laws of the State of California, with its primary place of business in the State of California. However, American Honda is a foreign corporation authorized to do business in the State of Illinois, and does in fact transact business throughout the State, including Peoria County.

Honda Limited is a foreign corporation, organized and existing under the laws of the Nation of Japan, with its primary place of business the Nation of Japan. It is not registered to do business in the State of Illinois, although Honda Limited's automotive products are sold to consumers in the United States, including the State of Illinois.

In its Motion to Quash, Honda Limited asserts that Geick's attempted service of Honda Limited through service upon American Honda, as a registered agent for Honda Limited, fails. American Honda was served through its registered agent in the State of Illinois, CT Corporation System, 208 South LaSalle Street, Chicago, Illinois 60604, on July 16, 1986, pursuant to an alias summons. On that same day, Geick also served upon CT Corporation System an alias summons addressed to Honda Limited, pursuant to the theory that American Honda is the registered agent for Honda Limited. Honda Limited's Motion to Quash service of process is founded upon the assertion that American Honda is not the registered agent for Honda Limited. Its Motion raises the question of whether American Honda, as a matter of law, is the registered agent of Honda Limited.

To determine whether service of process was valid upon a defendant in a federal court case, one must turn to Federal Rule of Civil Procedure 4. Federal Rule of Civil Procedure 4 sets out provisions for service upon a party not an inhabitant of or found within a state. Relevant to the present case, Rule 4(e) provides that if state law provides for service on an out of state party, plaintiff may comply with the state service provisions, where the basis of plaintiff's suit is not a federal statute or involves a court order which expressly sets forth the means of service. This is not to ignore the other provisions of Rule 4, which set out means of service under other circumstances, i.e., FRCP 4(d) and (i).

It is well settled law that under the Supremacy Clause, this Court is bound by the treaties of the United States, if applicable, even in the face of contrary state law. The United States Constitution, Article Six, Clause 2. As such, any express provisions in a treaty pertaining to means of service of process supersede and preempt all state and federal service of process statutes or rules, including, but not limited to, Federal Rule of Civil Procedure 4.

Relevant in the present case is the Hague Convention, 20 UST 361 (1969), which addresses "service abroad of judicial and extra judicial documents in civil or commercial matters." As set out in Article 1 of the Convention, the Hague Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to *transmit* a judicial or extra judicial document for *service abroad.*" (Emphasis added).

In *Lamb v. Volkswagenwerk Aktiengesellschaft*, 104 F.R.D. 95 (S.D.Fla. 1985) the court stated:

"The purpose of the Hague Convention is to simplify the procedures for serving judicial documents abroad to insure that the party to be served in a foreign country will receive notice in a timely fashion. There is nowhere among the provisions of the Hague Convention any indication that it is to control attempts to serve process on foreign corporations within the state of origin...." *Lamb v. Volkswagenwerk Aktiengesellschaft*, 104 F.R.D. 95, 97 (S.D.Fla.1985).

As was held by the Court in *Lamb*, the Hague Convention service provisions are only applicable in the case where the inter-

ested party is attempting to directly serve the defendant in his foreign country. *Id.* However, where service of process was entirely accomplished within the United States, by serving an agent of a foreign corporation or foreign defendant, the provisions of the Hague Convention are inapplicable. *Id.*

In the present case, Geick attempted service upon Honda Limited through its alleged agent, American Honda. American Honda's registered agent is CT Corporation System of Chicago, Illinois. As such, the present case is one in which attempted service of process was entirely accomplished within the United States. Therefore, the provisions of the Hague Convention are inapplicable.

Geick has attempted service on Honda Limited pursuant to the Illinois service of process provisions, as is so permitted by Federal Rule of Civil Procedure 4(e). In light of the fact that the Hague Convention places no limitations or restrictions on Geick's service of process, because it is inapplicable in this case, the Court must now turn to the Illinois service of process provisions to evaluate whether Geick's service of process complies with those requirements.

There are two ways for an Illinois court to exercise in personam jurisdiction over a defendant: (1) defendant has conducted sufficient activities within the state to have submitted itself to the jurisdiction of the Illinois courts; or (2) the defendant has been served with process in accordance with the formal requirements of Illinois law. *Schlunk v. Volkswagenwerk Aktiengesellschaft,* 745 Ill.App.3d 594, 99 Ill. Dec. 379, 495 N.E.2d 1114 (1st Dist.1986). In the present case, the second prong is the relevant provision which must be examined in light of the service of process provision set out in Ill.Ann.Stat., ch. 110, § 2–204.

Illinois Annotated Statutes, Ch. 110, ¶ 2–204, the service of process provision, provides· in relevant part:

"A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the state; or, (2) in any manner now or hereafter provided by law." Illinois Annotated Statutes, Ch. 110, ¶ 2–204, at 159 (Smith-Hurd 1983).

The first provision of this statute "leaving a copy of the process with its registered agent ..." is the provision that Geick has attempted to satisfy.

Although the two prongs of Illinois in personam jurisdiction are distinct, many Illinois courts when addressing the agent-service of process question, in cases where a parent corporation has been served through its subsidiary, focus on whether the parent corporation was "doing business" in Illinois. *Schlunk,* 99 Ill.Dec. at 383, 495 N.E.2d at 1118. "Doing business" is one means through which jurisdiction may be acquired over a non-resident corporation. *Cook Associates, Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 199, 57 Ill.Dec. 730, 734, 429 N.E.2d 847, 851 (1981).

As recognized by the court in *Schlunk,* there is no precise test for what constitutes "doing business" within the state. *Schlunk,* 99 Ill.Dec. at 383, 429 N.E.2d at 1118. Justice Cardoza defined "doing business" as a corporation operating within the state "not occasionally or casually but with a fair measure of permanence and continuity." *Id.,* quoting *Tauza v. Susquehanna Coal Company,* 22 N.Y.2d 259, 267, 115 N.E. 915, 917 (1917).

Several Illinois courts have addressed this question of what facts sufficiently constitute "doing business" in the State of Illinois. *Maunder v. DeHavilland Aircraft of Canada,* 102 Ill.2d 342, 80 Ill.Dec. 765, 466 N.E.2d 217, cert. denied 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984); *Schlunk v. Volkswagenwerk Aktiengesellschaft,* 145 Ill.App.3d 594, 99 Ill.Dec. 379, 495 N.E.2d 1114 (1986); *Stoehr v. American Honda Motor Company, Inc.,* 429 F.Supp. 763 (D.Neb.1977).

In *Maunder v. DeHavilland Aircraft of Canada,* 102 Ill.2d 342, 80 Ill.Dec. 765, 466 N.E.2d 217 (1984), two plaintiffs brought suit in Illinois against the Canadian manufacturer of an airplane that crashed in Zambia. Plaintiffs attempted service upon the manufacturer's wholly owned subsidi-

ary, DeHavilland Aircraft of Canada, Limited (hereafter Limited), a Delaware corporation, with its principal place of business in Rosemont, Illinois.

In evaluating whether Limited was an agent for the Canadian manufacturer for purposes of service, the court looked to the facts in the record defining the relationship between the two corporations. The court noted that the: (1) subsidiary was established and wholly owned by the parent corporation; (2) subsidiary's sole business was the sale of the parent corporation's aircraft parts; (3) parent corporation paid the salaries of the subsidiary's directors, and guaranteed the subsidiary's lease in Rosemont, Illinois; and (4) parent corporation included the subsidiary's address in its own advertising. *Maunder v. DeHavilland Aircraft of Canada,* 80 Ill.Dec. at 767, 466 N.E.2d at 219. Based upon these factors, the Court determined that the parent corporation was sufficiently "doing business" in Illinois, and thus, its subsidiary was a proper agent for service of process, in order to put the parent corporation on notice of the pending litigation against it. *Id.*

In the recent Illinois Appellate Court decision, *Schlunk v. Volkswagenwerk Aktiengesellschaft,* supra, the court upheld service of a West German corporation through its United States wholly owned subsidiary. In *Schlunk,* the defendant, Volkswagenwerk Aktiengesellschaft (hereafter VWAG), a West German corporation appealed the circuit court's denial of its motion to quash service, which had been executed in Illinois upon its wholly owned subsidiary, Volkswagen of America (hereafter VWOA), a New Jersey corporation. *Schlunk,* 99 Ill.Dec. at 379, 495 N.E.2d at 1114.

VWOA had been served through its registered agent for service of process in Illinois, C.T. Corporation System. *Schlunk,* 99 Ill.Dec. at 380, 495 N.E.2d at 1115. It then filed a timely appearance and answer to the complaint. *Id.* VWAG filed a special and limited appearance for purposes of quashing service of process. *Id.* The basis of VWAG's objection to the service was the assertion that VWOA is a separate and independent corporation that operates as an agent of VWAG, only for the purpose of receiving notices under the National Traffic and Motor Vehicle Safety Act, 15 U.S.C.A. § 1399(e) (West 1982). *Id.*

The court held that the relationship between the parent and subsidiary was more than just that, a parent and subsidiary, and was so close that it was certain that the parent was fully apprised of the pendency of the action by delivery of the summons to the subsidiary. *Schlunk,* 99 Ill.Dec. at 387, 495 N.E.2d at 1122. In arriving at this conclusion, the court considered several factors which defined the parameters of the parent and subsidiary relationship: (1) the subsidiary existed predominantly to promote the sale and distribution of its parent corporation's products in the United States; (2) the subsidiary was bound to sell the parent's products within its territory, and to maintain and repair the parent corporation's automobiles regardless of where they are sold; (3) the parent corporation dominated the subsidiary board of directors and often conducted the subsidiary board meetings in its own domicile; (4) the subsidiary was party to a detailed importer agreement, which made it the sole distributor of the parent corporation's products; and (5) the parent corporation was empowered to terminate the importer agreement without prior notice, if the subsidiary experiences business or financial difficulties. *Id.*

The detailed importer agreement between the parent and subsidiary was of particular interest to the court. In making its decision it considered the following facts: (1) the parent corporation made all decisions regarding the method of ordering; (2) the subsidiary had no claim against the parent corporation arising from a rejection of its orders; (3) the parent corporation had no liability to the subsidiary for early, late, or non-deliveries; (4) the subsidiary was required to consult with the parent corporation before establishing dealership arrangements and setting sales objectives; (5) the subsidiary was required to protect the parent corporation's service and trademarks to the extent that it was allowed to prosecute suits in the parent cor-

poration's name; and (6) under the terms of the agreement, the parent corporation required the subsidiary to keep it fully informed of all aspects of its business. *Schlunk,* 99 Ill.Dec. at 384–387, 495 N.E.2d at 1119–22.

■ The present case having been brought before this Court pursuant to 28 U.S.C. § 1332, diversity jurisdiction, this Court is obligated to give great deference to the position and authority of the Illinois Supreme Court. In the absence of a decision by that Court on this issue, this Court should make use of lower court decisions, if some exist, to ascertain what the Illinois Supreme Court position would be, if it was presented with this issue. Thus, this Court adopts and follows the *Schlunk* case in resolving the instant case.

There is *no* evidence in the record to establish that: (1) Honda Limited makes any decisions regarding the operations or ordering method of American Honda; (2) American Honda is precluded from bringing claims against Honda Limited for a rejection of its orders; (3) Honda Limited is relieved of liability to American Honda for early, late or non-deliveries; (4) American Honda is required to consult with Honda Limited before establishing dealership arrangements and setting sales objectives; (5) American Honda was required to protect Honda Limited's service and trademarks to the extent that it was allowed to prosecute suits in Honda Limited's name; and (6) under the terms of the agreement, Honda Limited required American Honda to keep it fully informed of all aspects of its business.

The only evidence in the record which establishes any evidence of control by Honda Limited over American Honda is: (1) out of 26 officers and directors of American Honda, one resides in Japan, the remaining 25 reside at various locations in the United States; (2) four of American Honda's officers and directors are also officers and directors of Honda Limited; and (3) Honda Limited uses American Honda's financial statements in preparing its annual report.

The Court finds this record insufficient to establish that the relationship between American Honda and Honda Limited is anything more than a parent/subsidiary relationship. *See, Stoehr v. American Honda Motor Co., Inc.,* 429 F.Supp. 763 (D.Neb. 1977). This relationship was held by the United States Supreme Court to be insufficient to deem the subsidiary a registered agent.

The United States Supreme Court in *Cannon Manufacturing v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925) held that a parent subsidiary relationship, by itself, is not sufficient to justify severance of the subsidiary as an agent for the parent corporation. *Cannon Manufacturing v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed.2d 634 (1925). Similarly, the court in *Schlunk* also required significant evidence of control by the parent over the subsidiary before it found that the subsidiary should be considered a registered agent of the parent corporation. Therefore, this Court must conclude that American Honda is not the registered agent for Honda Limited.

The Plaintiff makes the argument that *Schlunk* is inapplicable to the present case because of that court's assertion that "No two corporations have the same arrangements, and hence, no two cases will be exactly alike." Therefore, the *Schlunk* analysis is applicable only to the facts of that case.

Although this Court agrees that no two corporate structures are identical, it does not discern that statement in *Schlunk* to mean that it cannot use the *Schlunk* factors as a guide in evaluating what types of factors which give rise to a determination that a parent/subsidiary's relationship is more than just that under Illinois law. It is in this light that this Court has made use of the *Schlunk* factors, and has concluded that the record does not reflect that more than a parent/subsidiary relationship exists in the present case.

This Court is following the decision in *Schlunk* because it deems the *Schlunk* decision to be the best indicator of the position that the Illinois Supreme Court would take on this issue. However, it must be noted that this Court's independent ex-

amination of the issue would apply a different analysis.

In *Schlunk* the court states that there are two prerequisites to an Illinois court's exercise of personal jurisdiction over a defendant. The court stated:

"It is necessary (1) that the defendant has conducted sufficient activity within the state to have submitted to the jurisdiction of our courts and (2) that the defendant has been served with process in accordance with the formal requirements of Illinois law." *Schlunk*, 99 Ill. Dec. at 383, 495 N.E.2d at 1118.

Although the *Schlunk* court made note of this distinction, it then seemingly disregarded it in its analysis.

This Court adheres to the belief that minimum contacts and service of process are two distinct concepts, which require the application of differing standards when determining whether each has been met. However, for reasons previously set forth, this Court adopts and applies *Schlunk* in this case. Therefore, this Court holds that Honda Limited's Motion to Quash is GRANTED.