**AKARI IMEJI COMPANY, Plaintiff,**

v.

**QUME CORPORATION, a California Corporation, Lex Computer Systems, a Division of Schweber Electronics Corporation, Schweber Electronic Corporations, a New York Corporation, Microamerica, Inc., a Delaware Corporation, and Casio Computers Co., Ltd., a Japan corporation, Defendants.**

No. 89 C 0586.

United States District Court,
N.D. Illinois, E.D.

Sept. 7, 1990.

A. Sidney Katz, Kathleen A. White, Welsh & Katz, Chicago, Ill., for plaintiff.

William R. Carney, Daniel Lawler, Chicago, Ill., for Casio Computers Co., Ltd.

Clarence J. Fleming, Robert M. Mason, Jones, Day, Reavis & Pogue, Chicago, Ill., for Lex Computers and Micro America.

## ORDER

NORGLE, District Judge.

Before the court are three motions: plaintiff Akari Imeji Company's ("AIC") motion for default judgment, and defendant Casio Computer Ltd.'s ("Casio Computer") motions to set aside entry of default, and to quash service of process. For the reasons discussed below, AIC's motion is denied and both of Casio Computer's motions are granted.

## FACTS

On January 23, 1989, AIC filed suit against defendant Qume Corporation ("Qume"), alleging that Qume had infringed Patent No. 3,824,604 entitled "Alphanumeric Printing System Employing Liquid Crystal Matrix" (the "Stein Patent").[1] On April 24, 1989, AIC filed an Amended Complaint, adding defendants Lex Computer Systems and Micro America, Inc. AIC added defendant Casio Computer in its Second Amended Complaint which it filed on November 17, 1989. This pleading alleges that Casio Computer has infringed the Stein patent by:

> its development and subsequent making, selling, distributing and inducing others to use, in the United States, products, including the Crystal Print Series II Page Printer, the Crystal Print WP Page Printer and the Crystal Print Publisher, covered by the claims of the Stein patent.

Second Amended Complaint, ¶ 6.

AIC initially attempted to serve Casio Computer by mail through Casio Inc., a U.S. subsidiary incorporated under the

---

**1.** According to AIC, this patent encompasses a computer printing system, which incorporates a "xerographic printing machine."

laws of New York. AIC mailed the summons to Casio, Inc.'s corporate headquarters in Dover, New Jersey, but received no return acknowledgement form. On January 26, 1989, AIC had two summonses served personally at Casio Inc.'s New Jersey headquarters. One summons was addressed to "Casio Computer Co., Ltd." and the other was addressed to "Casio Computers Co., Ltd., c/o Casio, Inc."

After Casio Computer failed to respond to the summons within the requisite period, AIC asked the Clerk of the Court to enter a technical default against Casio Computer. On February 27, 1990, the Clerk entered the default. AIC then moved for a default judgment against Casio Computer, prompting Casio Computer to file its appearance and move to set aside the technical default. Casio Computer later filed its Response to AIC's Motion for Default Judgment, together with a Motion to Quash the service of summons.[2]

### DISCUSSION

The common denominator of each of the three motions before the court is the issue of sufficiency of service. If service was improper, the entry of default against Casio Computer is void;[3] Casio Computer's Motion to Set Aside Entry of Default and Motion to Quash necessarily must be granted, and AIC's Motion for Default Judgment necessarily must be denied. Conversely, if service was proper, the Motion to Quash must be denied and the court must apply the "good cause" test of Fed.R.Civ.P. 55(c) to determine whether to set aside the default, or enter judgment on it. Because the sufficiency of service issue is central to all of the motions before the court, it is addressed first.

Where the defendant is not an inhabitant of, or found within, the state in which the court sits, Fed.R.Civ.P. 4(e) provides the applicable rule regarding proper service of summons.[4] Rule 4(e) states that when an action is brought under a federal statute which does not provide for service of summons, service may be made under the circumstances and in the manner prescribed by the statutes or rules of the court of the state in which the district court sits. As this action is brought under the U.S. Patent Act (Title 35, U.S.C.), which does not prescribe a manner of service, service in this case must be made in accordance with the Illinois service rules.

Ill.Rev.Stat. ch. 110, ¶ 2–208(b) provides the manner in which a summons must be served on a defendant outside Illinois:

> The service of summons shall be made in like manner as service within this State, by any person over 18 years of age not a party to the action. No order of court is required. An affidavit of the server shall be filed stating the time, manner and place of service. The court may consider the affidavit, or any other competent proofs, in determining whether service has been properly made.

Because Casio Computer does not challenge the age or affidavit of the process server, the court looks to § 2–204, which provides the rule for service on corporations, to determine whether service was "made in a like manner as service within

---

**2.** After Casio Computer filed its Response to AIC's Motion for Default Judgment and its Motion to Quash, the Court permitted AIC to take the deposition of Casio, Inc. to determine the relationship between Casio, Inc. and Casio Computer.

**3.** *See United States v. Nuttall,* 122 F.R.D. 163, 165–166 (D.Del.1988) (where service of process is invalid, entry of default against improperly served defendant is void and must be set aside).

**4.** Nowhere in its pleadings does AIC challenge that Casio Computer is an inhabitant of, or is found within, the State of Illinois. In its Sec-

ond Amended Complaint, AIC merely alleges that:

> On information and belief Casio Computers Co., Ltd. is a corporation organized and existing under the law of the Country of Japan, having a regular place of business at 20 F. Shinjuku Sumitano Bldg., 6–1 Nishi–Shinjuku 2–Chome, Sinjuku, Tokyo 163, Japan.

Second Amended Complaint, ¶ 6. Therefore, the court assumes that Casio Computer is neither an inhabitant of Illinois nor found within Illinois for the purposes of Rule 4(e). The court further notes that in its briefs, as well as its pleadings, AIC fails to assert any facts linking either Casio Computer or Casio, Inc. to Illinois.

this State," for the purposes of § 2–208. Section 2–204 states:

> Service on private corporations. A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law. A private corporation may also be notified by publication and mail in like manner and with like effect as individuals.

Ill.Rev.Stat. ch. 110, ¶ 2–204.[5] It is undisputed that service here was not on a "registered agent" or "officer" of Casio Computer. The sole question before the court, therefore, is whether Casio, Inc. may be deemed to be the "agent" of Casio Computer for the purpose of § 2–204. AIC has the burden of establishing this relationship. *See Slates v. Int'l House of Pancakes*, 90 Ill.App.3d 716, 46 Ill.Dec. 17, 23, 413 N.E.2d 457, 463 (4th Dist.1980).

In the *Slates* case, the court looked to the law of agency to define the relationship necessary to render one corporation the agent of another for the purposes of service.

> Agency is a consensual, fiduciary relationship between two persons, created by law by which one, the principal, has a right to control the conduct of the agent, and the agent has a power to effect the legal relations of the principal. (Seavey, Law of Agency, sec. 3 at 3 (West 1964).) The agency relationship differs from other fiduciary relationships in that it is the duty of the agent to respond to the desires of the principal. Reuschlein, Agency and Partnership, sec. 5 at 11 (West 1979).

46 Ill.Dec. at 23, 413 N.E.2d at 463. There is no precise test for defining how much control a foreign parent corporation must wield over its domestic subsidiary before the subsidiary will be deemed its agent for the purposes of service. However, the general rule is that:

> The mere existence of a parent-subsidiary relationship is insufficient to establish the close ties necessary for a subsidiary to be deemed a parent's agent for the service of process. (See, e.g., *Geick* [*v. American Honda Motor Co.*], 117 F.R.D. 123 [C.D.Ill.1987]). On the other hand, it is not necessary that a parent's control of a subsidiary be so pervasive as to make the two corporations essentially one, or to make the subsidiary an alter ego or mere department of the parent. *Schlunk* [*v. Volkswagenwerk Aktiengesellschaft*], 145 Ill.App.3d 594, 105 Ill. Dec. 39, 503 N.E.2d 1045 [1st Dist.1986].

*Wissmiller v. Lincoln Trail Motosports, Inc.*, 195 Ill.App.3d 399, 141 Ill.Dec. 927, 930, 552 N.E.2d 295, 298 (4th Dist.1990).

Several recent Illinois cases applying this general rule have established a list of factors which courts may consider in categorizing parent/subsidiary relationships which fall between these two extremes. *See Geick v. American Honda Motor Co.*, 117 F.R.D. 123 (C.D.Ill.1987); *Schlunk v. Volkswagenwerk Aktiengesellschaft*, 145 Ill.App.3d 594, 105 Ill.Dec. 39, 503 N.E.2d 1045 (1st Dist.1986), *aff'd*, 486 U.S. 694, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988); *Maunder v. DeHavilland Aircraft of Canada*, 102 Ill.2d 342, 80 Ill.Dec. 765, 466 N.E.2d 217, *cert. denied*, 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984). Although not expressly articulated, a guiding principle underlying the factors in these cases, as in

---

**5.** In its Supplemental Memorandum, Casio Computer argues that § 2–204 is inapplicable here because 2–204(1) provides for service upon a corporate agent "found anywhere in the state" —whereas service here was in New Jersey, not Illinois. Supplemental Memorandum, p. 2, n. 1. This argument fails because § 2–204 is incorporated by reference into § 2–208, which expressly provides for service outside Illinois "in like manner as service within this State." In other words, although § 2–204 is itself limited to service within Illinois, under § 2–208, the *method* of service set out in § 2–204 applies to service

outside the state. Casio Computer also asserts that § 2–208 is inapplicable here, arguing that § 2–208 only applies to service of persons outside Illinois who have "submitted to the jurisdiction of the courts of this State." Supplemental Memorandum, p. 2. n. 1. This argument is wrong. Section 2–208(a) does apply to individuals who have not submitted to Illinois jurisdiction, but for these individuals, service outside Illinois "shall have the force and effect of service by publication" rather than the force and effect of personal service. Ill.Rev.Stat. ch. 110, ¶ 2–208(a).

*Slates,* appears to be the issue of control. *See Geick,* 117 F.R.D. at 127 ("[T]he court in *Schlunk* also required significant evidence of control by the parent over the subsidiary before it found that the subsidiary should be considered a registered agent of the parent corporation").

In determining that a domestic subsidiary was an agent for a Canadian airplane manufacturer for the purposes of service, the court in *Maunder* noted numerous facts which helped define the relationship between the two corporations: the subsidiary was established and wholly owned by the parent; the parent paid the salaries of the subsidiary's directors; the parent guaranteed the subsidiary's lease; the subsidiary's sole business was the sale of aircraft parts for the parent's airplanes; and the parent listed the subsidiary's address in advertisements carried in American aviation journals. *Maunder,* 80 Ill.Dec. at 767, 466 N.E.2d at 219.[6]

Similarly, in *Schlunk,* the court listed numerous factors which it considered in ruling that a domestic subsidiary was the agent of a German automobile manufacturer ("VWAG") for the service of process. Among other things, the court noted that the subsidiary was wholly owned by VWAG and existed predominantly to promote the sale and distribution of the VWAG products in the United States; was obligated to repair and sell parts for VWAG automobiles within a prescribed territory, regardless of where these automobiles were sold; was contractually required to apprise VWAG of all aspects of its business; and was authorized to prosecute trademark infringement suits in VWAG's name. *Schlunk,* 105 Ill.Dec. at 47, 503 N.E.2d at 1053. VWAG, in turn, was empowered to terminate the importer agreement without prior notice if the subsidiary experienced business or financial difficul-

ties; controlled the subsidiary's choice of dealers, designation of products and services, stock levels, and methods of ordering; and dominated the subsidiary's board of directors[7]. *Id.* The *Schlunk* court also found that the subsidiary often conducted its board meetings in its parent's domicile;[8] and did not publish its own annual report, but was listed on a consolidated financial sheet along with the parent and other subsidiaries. *Id.* 105 Ill.Dec. at 45, 503 N.E.2d at 1051. The court concluded that the subsidiary exercised "no free will of its own in deciding whether to accept the importer agreement of any other aspect of its relationship with VWAG." *Id.* 105 Ill.Dec. at 48, 503 N.E.2d at 1054.

In *Geick,* the court explicitly adopted and followed the reasoning of the *Schlunk* case in holding that American Honda Motor Company, Inc. ("American Honda") was not the agent of its foreign parent, Honda Motor Company Ltd. ("Honda Limited"), for the purposes of service. The court listed all of the relevant factors upon which the *Schlunk* court based its finding of an agency relationship, and held that the majority of these factors were not established by the plaintiffs.

> There is *no* evidence in the record to establish that: (1) Honda Limited makes any decisions regarding the operations or ordering method of American Honda; (2) American Honda is precluded from bringing claims against Honda Limited for a rejection of its orders; (3) Honda Limited is relieved of liability to American Honda for early, late or non-deliveries; (4) American Honda is required to consult with Honda Limited before establishing dealership arrangements and setting sales objectives; (5) American Honda was required to protect Honda Limited's service and trademarks to the extent that it was allowed to prosecute suits in

---

**6.** The concurring opinion in *Maunder* went a step further than the majority opinion and cited numerous factors supporting its conclusion that the subsidiary corporation was an alter ego of the parent. *Maunder,* Simon, J., concurring, 80 Ill.Dec. at 771–2, 466 N.E.2d at 223–4.

**7.** Eight of the fourteen directors of the subsidiary's board were also directors of VWAG and

were West German residents. *Id.* 105 Ill.Dec. at 45, 503 N.E.2d at 1051.

**8.** Five of the seven board meetings conducted by the subsidiary in 1983 and 1984 were held in West Germany. *Id.* 105 Ill.Dec. at 45, 503 N.E.2d at 1051.

Honda Limited's name; and (6) under the terms of the agreement, Honda Limited required American Honda to keep it fully informed of all aspects of its business. [Emphasis in original.]

The only evidence in the record which establishes any evidence of control by Honda Limited over American Honda is: (1) out of 26 officers and directors of American Honda, one resides in Japan, the remaining 25 reside at various locations in the United States; (2) four of American Honda's officers and directors are also officers and directors of Honda Limited; and (3) Honda Limited uses American Honda's financial statements in preparing its annual report.

*Geick,* 117 F.R.D. at 127. The *Geick* court concluded that these factors failed to establish that the relationship between American Honda and Honda Limited was anything more than a parent/subsidiary relationship—which was not enough to make American Honda the agent of Honda Limited for the purposes of service of process. *Id.*

Casio Computer applies the *Maunder* and *Schlunk* factors to the facts of this case and argues that here, as in *Geick,* these factors are not met. The basic facts upon which Casio Computer relies are largely undisputed by AIC. Unlike the parties in *Maunder,* Casio, Inc. is not wholly owned by Casio Computer (Casio Computer owns 60% of the voting stock of Casio, Inc., and Toyo Menka Kaisha Ltd., another Japanese corporation, owns the remaining 40%); Casio Computer does not pay the salaries of any of Casio, Inc.'s officers or directors; Casio, Inc. is not the sole or exclusive distributor in the United States of all products manufactured by Casio Computer[9]; Casio, Inc. is not obligated

to sell only products manufactured by Casio Computer, and in fact purchases and distributes the products of other manufacturers; and neither Casio, Inc. nor Casio Computer uses the address of the other company in its advertising. Only one *Maunder* factor clearly cuts in AIC's favor: Casio, Inc. was founded by the directors of Casio Computer. In light the numerous *Maunder* factors weighing against a finding of agency, this factor alone is not enough to render Casio, Inc. its parent's agent for the purposes of service under *Maunder.*

Similarly, the vast majority of *Schlunk* factors weigh in favor of Casio Computer. Unlike the domestic subsidiary in *Schlunk,* Casio, Inc. is not obligated to warrant or repair products manufactured by Casio Computer; is not obligated to keep Casio Computer informed of all aspects of its business or to consult with Casio Computer in setting goals or business objectives; does not conduct its board meetings in its parent's domicile;[10] and is not authorized to institute any litigation in the United States in the name of or on behalf of Casio Computer—to enforce trademark rights, or for any other purpose. Further, unlike VWAG, Casio Computer is not empowered unilaterally to terminate the importer agreements involving it and Casio, Inc.; does not designate which products Casio, Inc. will purchase; and does not dominate Casio, Inc.'s board of directors.[11]

By contrast, comparatively few *Schlunk* factors appear to support AIC's position. Like the subsidiary in *Schlunk,* Casio, Inc. does not publish its own annual report, but is listed on a consolidated financial sheet along with Casio Computer and other "significant subsidiaries;" and Casio, Inc. exists predominantly to promote the sale and dis-

---

**9.** Casio Computer points out that among the products not purchased or distributed by Casio, Inc. are the computer-driven, xerographic printers manufactured by Casio Computer which are the subject of this patent lawsuit.

**10.** Casio Inc.'s board of directors regularly meets at its corporate headquarters in Dover, New Jersey. During the last five years, Casio, Inc. has conducted eleven board meetings, all of which were held in the U.S.

**11.** AIC points out that 5 of Casio Inc.'s 12 directors are also directors of Casio Computer. This overlap in directors may enable Casio Computer to wield considerable influence over Casio Inc.'s board, but it does not enable it to "dominate" in the same manner in which VWAG (which controlled a majority—8 of 14— of its subsidiary's directors) dominated its subsidiary's board.

tribution of Casio Computer's products in the United States.[12] In view of the many factors weighing against a finding of agency, these two factors are not sufficient to render Casio, Inc. its parent's agent for the purposes of service under the *Schlunk* analysis.

AIC appears implicitly to concede that the majority of factors upon which the *Maunder* and *Schlunk* courts relied are not supported by the facts here. *See* Reply Memorandum, p. 16; Reply to Supplemental Memorandum, p. 4. AIC argues, however, that the holdings of these cases are limited to their facts and that other facts unique to this case establish that Casio, Inc. is the agent of Casio Computer for the purposes of service. This argument was expressly rejected in the *Geick* case.

The Plaintiff makes the argument that *Schlunk* is inapplicable to the present case because of that court's assertion that "No two corporations have the same arrangements, and hence, no two cases will be exactly alike." Therefore, the *Schlunk* analysis is applicable only to the facts of that case.

Although this Court agrees that no two corporate structures are identical, it does not discern that statement in *Schlunk* to mean that it cannot use the *Schlunk* factors as a guide in evaluating what types of factors which give rise to a determination that a parent/subsidiary's relationship is more than just that under Illinois law. It is in this light that this Court has made use of the *Schlunk* factors, and has concluded that the record does not reflect that more than a parent/subsidiary relationship exists in the present case.

*Geick,* 117 F.R.D. at 127. The court agrees with the reasoning of the *Geick* court and holds that the factors established in the *Maunder* and *Schlunk* cases provide a relevant guide in evaluating the nature of the relationship between Casio, Inc. and Casio Computer.

The court also recognizes that the factors considered in these previous cases are not exclusive and do not constitute an inflexible test. It is therefore appropriate for the court to consider "additional factors" raised by AIC which were not raised in previous cases.

Many of the factors listed by AIC are either irrelevant [13] or prove the opposite of what AIC seeks to establish.[14] Although

---

**12.** AIC argues that the "proper standard" set forth in the *Schlunk* opinion can be distilled to a single test: "whether the subsidiary corporation exists 'predominantly to promote the sale and distribution of its parent's products in this country.'" Reply Memorandum at p. 12. This argument is erroneous. First, the supplier/distributor relationship to which AIC refers is only one of many factors which the *Schlunk* court considered. Second, AIC fails to explain why this factor should be accorded more weight than any of the other *Schlunk* factors. Clearly, an independent distributor is not necessarily the agent of its primary supplier (even though it may exist primarily to sell and distribute this supplier's goods). AIC provides no compelling reason why an agency relationship must automatically be presumed simply because the supplier is also a partial owner of the distributor.

**13.** For example, AIC states that: "Casio, Inc. also obtains advertising copy from Casio Computer. This includes both free copies of certain product brochures and the purchase of the offset for other brochures." Reply Memorandum, p. 8. These facts prove little about the relationship between Casio Computer and Casio, Inc. It seems natural for a product manufacturer to distribute some free advertising copy to its distributor, regardless of whether it exerts any control over the distributor corporation. Notably, AIC does not claim that Casio Computer treats other non-subsidiary distributors differently by charging them for the same brochures which Casio, Inc. receives for free. Further, the fact that Casio, Inc. must purchase the offset for other brochures seems, if anything, to highlight the fact that these two corporations are indeed separate entities.

**14.** For example, AIC states that:

> At certain times in Casio, Inc.'s history, Casio, Inc. has acted as Casio Computer's agent in the U.S. and Canada. Twice in 1977 and again in 1980, Casio, Inc. agreed to act a Casio Computer's agent and perform certain services for Casio Computer with respect to Casio Computer's sale of products to third parties. [Citations omitted.] Casio, Inc. was compensated for these services; however, that compensation was subject to change at Casio Computer's sole discretion. [Citation omitted.]

Reply Memorandum, pp. 9–10. These facts appear to contradict AIC's position. If Casio Computer's control over Casio, Inc. were as complete as AIC seeks to establish, Casio Computer would not have needed to pay Casio, Inc. to

some of the remaining factors do weigh somewhat in AIC's favor [15], the court is not persuaded that these factors, as a whole, outweigh the majority of *Maunder* and *Schlunk* factors which cut against the existence of an agency relationship between Casio, Inc. and Casio Computer.

## CONCLUSION

For the reasons set forth above, the court holds that Casio, Inc. is not the "agent" of Casio Computer for the purposes of service. Therefore, Casio Computer's motions to quash and set aside entry of default are both granted and AIC's motion for default judgment is denied.

IT IS SO ORDERED.

perform these agency services and would not have needed to cement the commitment with a contract. Further, the very existence of these limited agency agreements establishes, by negative implication, that Casio, Inc. does not act as Casio Computer's agent, except when required by contract.

15. For example, AIC states that: Casio Computer provides Casio, Inc. with loans to help support its working capital; approximately ninety six percent of the products sold by Casio, Inc. are manufactured by Casio Computer; some of the four percent of the products sold by Casio, Inc. which were not manufactured by Casio Computer are purchased pursuant to four party agreements involving Casio, Inc., Casio Computer, Toyo Menka, and one of four other Japanese manufacturing companies; and approximately ninety nine percent of the products sold by Casio, Inc. bear the Casio trademark (owned by Casio Computer).